No. 3973

Second Circuit

(Second Division)

———

HARRIS v. LOUISIANA OIL REFG. CORP.

———

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Refused.)

———

George Thurber, of Shreveport, attorney for plaintiff, appellant.

Barnette & Roberts, of Shreveport, attorneys for defendant, appellee.

CULPEPPER, J. Plaintiff brought this suit under the Employers' Liability Act (Act No. 20 of 1914, as amended) to recover compensation in the amount of 32½ per centum of the weekly wages of her husband for 300 weeks, which she alleges were $47.10 per week at the time of his death. It is alleged that plaintiff's husband, Oliver Harris, was an employee of defendant at the time of his death, which occurred on November 1, 1929, and had been employed since August the first previous; that the duties he was to perform consisted in cleaning and repairing storage tanks belonging to defendant, at such places and at such times as he was ordered; that while engaged in cleaning a tank for his employer in the town of Vivian, La., working on the inside of the tank, he was overcome by gas fumes in the tank and died from asphyxiation.

Defendant denied liability on the ground and for the alleged reason that plaintiff's

husband was not at the time of his death, and had never been, an employee of defendant, as contemplated under the Employers' Liability Law, but alleges that said Harris was an independent contractor doing contract work for defendant.

Upon trial of the case in the lower court, there was judgment for the defendant, and plaintiff has appealed.

The sole issue involved therefore is whether Oliver Harris was an employee or an independent contractor, as defined in the Employers' Liability Law. The facts as disclosed by the testimony are substantially as follows:

Defendant corporation owned storage tanks at various towns and places in Shreveport and other towns in the territory in which it operated. These tanks were used in which to store large quantities of gasoline to be distributed or dispensed as the business required. These tanks would in the course of time become foul from sediment and need cleaning. Sometimes they would spring leaks, which it became necessary to repair. For some months before Mr. Harris' death he had been going from place to place cleaning and repairing these tanks for defendant. In each instance when requested by defendant, Mr. Harris would go to the town or place where one or more tanks would need cleaning or repairing, look over and examine the tanks, and would then submit a price for which he would do the work. If satisfactory, defendant would accept the offer. Under the agreement Harris would furnish all of the machinery, tools, labor, and other equipment with which to do the work. Mr. Berry, who says he contracted with Mr. Harris for the particular job on which Harris lost his life, testified that the price agreed

upon was to cover "* * * all of the construction and tools and so forth, that were necessary to do the work, and was to cover any expenses that Mr. Harris might see fit to incur up there (meaning at Vivian) in order to complete the job. He had to pay his laborers, whatever labor he had and also included his profits."

"Q. And the use of his equipment?
"A. Yes sir."

Mr. Harris furnished his own transportation to and from the places where the work was done. As shown by the testimony of Mrs. Harris, plaintiff, who accompanied her husband on most of these trips, Mr. Harris sometimes employed help and at other times did all the work himself. He always did the work on the inside of the tanks himself. His helpers usually stayed on the outside to assist him in anything he might call for or need from the outside. While on the job in which he lost his life he had a negro helper. He paid for all of his helpers.

In doing this work Mr. Harris had a portable steam boiler which forced live steam into the tank, thus cutting out and removing the gas fumes. Sometimes, however, he would run water into the tanks in the place of live steam. He kept this process up for 24 hours, when he would go in the tank, using a gas mask for protection, and use steel brushes or brooms with which to sweep down and clean the tank. He would stay in the tank only thirty minutes at a time, come out for awhile, and then return again. Mrs. Harris states it generally took her husband about three hours to clean one tank, depending on its size and condition of cleanliness. On the occasion when he lost his life, Mr. Harris was on the inside of the tank cleaning it and was overcome by

gas fumes and died before he could be rescued.

Referring again to Mr. Berry's testimony, he says that in contracting with Mr. Harris to perform this particular job, there was nothing said as to whether Harris was to do the work himself, and nothing said as to whether Harris was to employ any labor to help him; that Mr. Harris was considered as the contractor; that he knew the requirements of the company about cleaning tanks and that "it was up to him to do the work himself or to hire it done"; that after Mr. Harris had gone to Vivian and looked at the two tanks to be cleaned, he returned and made a price of $65 for each tank, which was agreed to.

In each instance when Mr. Harris would complete a job and notify the company, the company's inspector was sent to the place to examine the work and, if found satisfactory, payment of the price agreed upon would be made. Mr. Harris' name was never carried on the pay rolls of defendant corporation. Bills or statements were made out by Harris and presented to the corporation for the amount previously agreed upon for that particular job.

The letterhead used by Mr. Harris indicates that he held himself out a contractor. It is as follows:

"O. H. Harris
"General Contractor
"Shreveport, La.

"Specializing in      Portable Steam
"Safety First        System Used on
"Tank Cleaning     Gas Tanks
  and Repairing"

The following is copy of one of the bills made out by Mr. Harris to defendant:

"To Louisiana Oil Ref. Corp.
  "In account with O. H. Harris
  "Invoice on Three Tanks at Smackover, Ark. Three tanks at Smackover, Ark. have been cleaned as per contract. Aprxm. Five barrels of corode and rust was removed from these tanks.
(Contract for same) Two Hundred and Eighteen Dollars $218.00.
"O. K.
"Agent B. E. Llman
     "Smackover, Ark."

The work undertaken by Mr. Harris was for a completed job or result, as a unit or a whole, and for a stipulated consideration. It was under the control of defendant as to the results of the work only, but not as to the means by which the results were accomplished.

Act No. 85 of 1926, which is an amendment to the Employers' Liability Act, defines an "employee," as well as an "independent contractor"; the pertinent portion of the act being as follows:

"A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as an independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this Act. The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished." Page 111, sec. 3, subsec. 8.

It is clear, therefore, we think, that the manner in which the deceased Harris performed the services for defendant constituted him an independent contractor. It is true, Mr. Harris performed the bulk of the manual labor himself, but he was not employed specifically to do this manual labor himself. He was contracted with to accomplish a certain specified result as

a whole, for a specified price for the whole, the means being left entirely up to him. He in fact had full charge of, and accomplished the results in his own way. Defendant gave him no instructions, nor was he in any way directed or controlled. Defendant had nothing to do with the labor, tools, and implements to be used. It was only the results in which defendant was interested. Defendant's only prerogative was to inspect and approve the finished work, and pay for same. This has all the characteristics of that of a contract by an independent contractor. The fact that the contractor himself did most of the work was merely incidental. There was nothing to prohibit him from doing the work if he so chose, and the fact that he did so does not constitute him a mere employee. Clements v. Luby Oil Co., 170 La. 910, 129 So. 526.

In Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99, the court says:

"It is the right to interfere that establishes the difference between a mere servant and an independent contractor."

The evidence in the present case discloses that defendant neither reserved the right in the contract with Oliver Harris, to interfere, nor did defendant actually interfere in, or have anything to do with the work while it was in progress.

We have carefully examined the authorities cited by plaintiff's counsel, but they do not, we think, support plaintiff's contention, and, under the most liberal construction of the statute, we are unable to reach the conclusion that Oliver Harris was an employee of the defendant corporation.

For the reasons assigned the judgment of the lower court is affirmed.