### HUGHES v. LYON LUMBER CO. et al.
### No. 1030.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

Laycock & Moyse, of Baton Rouge, for appellant.

Mat J. Allen, of Amite, for appellee.

LE BLANC, J.

This is a compensation suit in which the plaintiff seeks to recover the maximum allowed as for the total loss of his right eye and the partial loss of sight or use of the left eye. He alleges that the accident which gave rise to his claim occurred on June 28, 1930.

Through his attorney he had been negotiating for a settlement of his claim with the Lyon Lumber Company for a considerable time. Finally, on January 22, 1931, that company wrote his attorney declining any responsibility, and intimating that his client's claim, if any existed, was against a man named J. W. Smith, with whom they had a contract to purchase logs owned by him. Acting on this information, the present suit was instituted against both the Lyon Lumber Company and Julius W. Smith, and judgment is prayed for against them both in solido.

In paragraph 4 of his petition, plaintiff avers that he was engaged in hauling sawlogs from the woods to the log camp of defendant at Livingston, La., "by employment of the Lyon Lumber Company, through its agents, and Julius W. Smith."

In the course of the trial, plaintiff admitted that he was not employed by Smith, and judgment was rendered dismissing the suit as to that defendant. Counsel for Lyon Lumber Company contended that by that admission, which was equivalent to a modification of the allegations thereof, plaintiff's petition set forth no cause of action against his client, and accordingly he filed an exception of no cause of action in its behalf. His contention appears to be based on the theory that the relation of plaintiff's employment by the Lyon Lumber Company was established through the agency of Julius W. Smith. It must be said that the petition contains certain averments which might be interpreted as to give it that meaning and effect. We believe, however, that the confusion was brought about by reason of the information contained in the letter written by the Lyon Lumber Company, above referred to, and that plaintiff's intention, although not clearly expressed, was to insure his cause of action against either the Lyon Lumber Company or Julius W. Smith, or both of them. That idea seems to be conveyed in that part of paragraph 4 of his petition from which we have quoted. We believe that the petition sufficiently disclosed a cause of action against the Lyon Lumber Company, and that the exception was properly overruled.

The defense of the Lyon Lumber Company is that plaintiff was in no way in their employ at the time he was injured and had no connection whatsoever with them. It denies that Julius W. Smith was its agent, and avers, according to information and belief, that plaintiff was an independent contractor, under an agreement with some person unknown to it.

The defense presents a direct issue of fact on which a decision of the case rests. Was the plaintiff, as he alleges, employed by the Lyon Lumber Company, or did he have such a relation of employment with that company as to make it liable to him for compensation under the statute? The lower court rendered judgment in favor of plaintiff, awarding him compensation for a period of 200 weeks. Defendant Lyon Lumber Company, appealed, and plaintiff answered asking for an increase to 400 weeks.

The direct evidence on which plaintiff relies consists principally of his own testimony, which is to the effect that he was working under Mr. Bob May, who was manager of the Lyon Lumber Company's logging outfit, and that he was paid for hauling logs by the company. However, at the very beginning of his testimony, when asked by his counsel the direct question, "Who were you employed by?" he answers, "I was employed, I consider, by the Lyon Lumber Company." When cautioned not to tell what he "considered" only, he states: "I cannot take the stand and swear that they employed me direct. They were working under the office—under the influence of the Lyon Lumber Company." By "they" we understand him to mean parties from whom the Lyon Lumber Company bought timber, one of these being Julius W. Smith. This necessarily leads us to a consideration of the relations that existed between the company and Smith.

There is a contract filed in the record, dated June 12, 1930, by the terms of which J. W. Smith proposed to sell to the Lyon Lumber Company certain timber on lands which according to an affidavit executed a few days subsequently, belonged to him. The contract is approved and accepted for the Lyon Lumber Company by R. W. May and W. J. Stebbings, logging manager and assistant manager, respectively. Under its terms, Smith was to receive $5.50 per thousand feet for all logs delivered less the severance tax due the state, and the balance, the contract reads, "to be paid to Dennie Lockhart, Logging Contractor employed by me, whose address is Walker, La."

It was while hauling logs from this tract of land that plaintiff was injured in June, 1930.

The purport of the contract between Smith and the company is that Smith was selling timber at a fixed stumpage price and Lockhart was to log it for him.

According to Lockhart, who was summoned as a witness by the court, he went to Smith himself and made the bargain for logging the timber. He testifies that Hughes also wanted to log the Smith timber, but could not make a deal with him. Thereupon Hughes made an arrangement with him by which he understood that they would each haul separately, but after a while they hauled together, both shared the expenses and divided the profits equally. When asked the direct question, "Who paid Hughes?" he says, "Well, I paid him in a way, you might say. They (referring to the Lyon Lumber Company) paid me. It came to me, the check, and we divided the profits, Mr. Hughes and me." This division of profits, he states afterwards, came after taking out the expenses.

Under this evidence, it is clear that Hughes was either an employee of Lockhart or his partner, but he was certainly not an employee of the Lyon Lumber Company.

Counsel seems to attach much importance to a check issued by the Lyon Lumber Company in favor of Hughes. This check is for $20.28. On examining it, we find that it is a voucher check and is in payment of all logs hauled under "Contract #575 O. E. Davison," which contract is in no way connected, as far as the record shows, with the Smith contract under which Lockhart was hauling. All other checks filed in evidence and having to do with the Smith contract are made payable to Dennie Lockhart as provided for in the contract itself. Plaintiff testified, and he produced a witness who also said that he had received other checks from the Lyon Lumber Company on this contract, but there do not appear to have been any other such checks issued according to records and books of the company.

Bob May, logging manager of the company, positively denies that he had ever employed Hughes as the latter had testified.

The check for $20.28, referred to, bears a notation to the effect that it is for the amount due "less Big Store account, $47.52." But again we say this check was issued against another contract than the one under consideration and is not connected with it. One of the checks made to Lockhart also bears a notation to the effect that it is for the amount due less a store account of Shell Hughes, which to our mind indicates that the company did not consider Hughes at all in the contract; otherwise the check would have been made to him and his bill at the store deducted therefrom. He refers to the orders he gave the men working under him which were honored at the company's store, and yet Lockhart testifies that the store would not accept Hughes' orders until they were satisfied that the amount was to be deducted from his (Lockhart's) check. Lockhart, it will be remembered, was a witness summoned by the court, and can hardly be said to be more friendly to one side than the other.

Two of the Lyon Lumber Company's log scalers, Victor H. Smart and Rube Howse, both called as witnesses by the court, testified that there were no logs scaled for Hughes' account.

We have concluded from the testimony as a whole that plaintiff has completely failed to establish the relationship of employer and employee between the Lyon Lumber Company and himself. Viewed in its most favorable light, the evidence shows him to have been a partner of Lockhart who was an independent contractor, and from the agreement between them he may also be so designated. They undertook to do a specific work, attended to it as they pleased, hired and discharged their own men, and were under no control or supervision of the Lyon Lumber Company or its employees whatsoever save as to results only. The logs which they hauled had to come up to certain specifications, and the company merely interested itself in scaling them as they were delivered. And even this, as already shown, was done for the account of Lockhart and not for Hughes.

Considered from this point of view, the case would come under the ruling made in the cases of Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196; Johnson v. Vincennes Bridge Co., 167 La. 108, 118 So. 820; Myers v. Newport Co., 17 La. App. 227, 135 So. 767. In all of these cases the parties seeking compensation were held to be independent contractors, and, as such, could not recover.

The judgment of the district court is erroneous, and will have to be reversed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be,

522

and the same is hereby, set aside, avoided, and reversed, and it is further ordered that there be judgment in favor of the defendant Lyon Lumber Company and against the plaintiff Shell Hughes, rejecting the latter's demand and dismissing his suit as against the said defendant Lyon Lumber Company, at his costs.