(60 South. 206.)

No. 19,061.

ROBICHAUX et ux. v. MORGAN'S L. & T. R. & S. S. CO.

(Dec. 16, 1912.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 88*)—INJURIES TO SERVANT—EXISTENCE OF RELATION—INDEPENDENT CONTRACTOR.

A railroad company for which a contractor has undertaken to build or put in condition a new roadbed is not liable in damages for injuries sustained by a person employed by the contractor and over whom, in the discharge of his functions, the company exercises no control. Nor is the question of such liability affected by the fact that the injuries are attributed to defects in a locomotive hired by the contractor from the company, and to de-

fects in the track over which the locomotive was operated, where it appears that both locomotive and track were used daily and for a considerable period, without objection or notice, under circumstances which rendered it impossible that the party injured should have been ignorant of such defects if they existed. Nor yet is the question of the company's liability affected by the fact that it reserved to itself a right of supervision to the extent necessary to secure the proper execution of the contract and the right to object to the employment of persons selected by the contractor to operate his construction trains over its road.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–152; Dec. Dig. § 88.*]

*(Additional Syllabus by Editorial Staff.)*

2. ESTOPPEL (§ 58*)—EQUITABLE ESTOPPEL—GROUNDS.

A railroad is not estopped from denying that a person killed while in the employ of a contractor was its employé by the publication, after the accident, of a notice offering a reward for any information leading to the conviction of the villains who caused the wrecking of its train, and the death of two of its employés.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 144, 145; Dec. Dig. § 58.*]

Appeal from Nineteenth Judicial District Court, Parish of St. Martin; James Simon, Judge.

Action by Aladin Robichaux and wife against Morgan's Louisiana & Texas Railroad & Steamship Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Felix Voorhies, of New Iberia, Emile Vuillemont, of St. Martinville, and Gordon A. Sandoz, of New Iberia, for appellants. Caffery, Quintero, Gidiere & Brumby, of New Orleans, and Martin & Martin, of St. Martinville, for appellee.

Statement of the Case.

MONROE, J. [2] Plaintiffs are the parents of Charles Robichaux, deceased, and they allege that their son lost his life by reason of defendant's negligence while discharging the duties of train conductor in defendant's employ, and they pray for damages. Defendant denies that Charles Robichaux was in its employ at the time of his

death, and alleges that he was employed by Dorwin & Co., independent contractors, who were doing certain work for it; and, in the alternative, that he came to his death as the result of his own negligence, and, further answering, it says that it is not liable in any event, because of a certain provision in its legislative charter exempting it from liability under the circumstances set forth in the petition. Plaintiff filed a plea of estoppel to that part of defendant's answer wherein it alleges that "at the time of the accident which resulted in the death of Charles Robichaux the said Robichaux was not in the employ of the defendant," on the ground that shortly after said accident defendant caused a notice to be published offering a reward "for any information leading to the conviction of the villains who placed obstructions on its track and caused the wrecking of its train, and the death of two of its employés," thereby admitting that their son, who was one of the parties whose death had thus been caused, was its employé. The evidence shows that at the time of the accident in question the firm of Dorwin & Co. was engaged, under contract with defendant, in filling a trestle (on one of its branch lines, known as the Baton Rouge Extension), beginning at a point about a mile to the eastward of Breaux bridge and extending, through the Atchafalaya bottom, for about four miles in the direction of the Atchafalaya river, and that Charles Robichaux was in the employ of said firm as conductor of a dirt train, and was killed, whilst acting in that capacity, by the derailing of the locomotive on which he was riding. It appears that for some time before, beginning at a period, perhaps, antedating the beginning of the work by Dorwin & Co., defendant had been troubled by having obstructions placed upon the track of said branch road with the apparent purpose of wrecking its trains, and that its officers had

some reason for suspecting that the locomotive on which Robichaux was riding had been derailed in that way, and, though they were unable to verify their suspicions, the engineer in charge of the work that was being done felt it to be his duty to take some steps towards finding out the truth, and by way of explanation of the offer of a reward, as made, he says in his testimony (in effect) that he wanted to interest the officers of the company and others, and that, as Dorwin & Co. were strangers in the country, he thought that an advertisement referring to the killing of their employés would not be so likely to accomplish that purpose as one in the form that was adopted. As to the fact that Robichaux was employed by Dorwin & Co., and was not employed by defendant, there is no dispute whatever, and we can find nothing in the advertisement relied on by plaintiffs to estop defendant from showing the truth, since plaintiffs were not thereby induced to do, or to refrain from doing, anything which they would or would not otherwise have done.

## Opinion.

[1] Beyond that it is shown, without objection or contradiction, that defendant's representatives gave no instructions to the employés of Dorwin & Co. with respect to the work in which they were engaged. At a later stage in the trial it was shown that the contract between defendant and Dorwin & Co. had originally been in writing in duplicate, and that the duplicate of which defendant had possession had been mislaid, and defendant, through counsel, thereupon offered what purports to be a copy or a copy of a copy of the original which the witnesses who had the handling of it and were in a position to know testified, to the best of their knowledge and belief, was correct, and which was admitted in evidence over the objection of plaintiffs' counsel that it was not

the best evidence, that the duplicate original in the possession of Dorwin & Co. had not been accounted for, etc. If, however, the contract, as evidenced by the copy in question, be excluded, together with the testimony relating to its contents (of which a good deal was admitted subject to plaintiffs' objection), the fact as established by plaintiffs' own witnesses remains that their son was not in the employ or under the direction or control of defendant when he was killed but was in the employ and pay of Dorwin & Co., and subject to the orders of that firm. On the other hand, if the contract is to be considered, we find that according to its terms, whilst defendant was accorded a right of supervision to the extent necessary to enable it to secure the proper execution of the contract, by the contractors, the employment, direction, and control of the persons employed in the doing of the work were left entirely to the contractors, subject to the one condition that defendant should have the privilege of objecting to the employment of a person whom it considered unfit for the duty to which he might be assigned; that condition being, no doubt, incorporated in the contract because defendant obligated itself to lease to the contractors the locomotives and cars required by them and was unwilling that they should be handled by incompetent men.

Plaintiffs allege that:

"Their son * * * while in the employ of said [defendant] corporation, and in the active discharge of his duty, as conductor on its construction train * * * and on the road of said corporation, * * * was killed outright, together with the engineer, also in the employ of said corporation, by the derailment and overturning of the locomotive used by said corporation to draw its construction train," etc.

It is then alleged that the accident was due to the facts that defendant was operating upon a new and unsafe road a locomotive which was too old, heavy, and unwieldy for such service and the throttle valve of which was apt to fly open without warning, unless checked by means of a wire fastener, and start the engine. But, as we have seen, there were no contractual relations between plaintiffs' son and defendant and the construction train upon which he was employed was that of his employers, Dorwin & Co. It is true that the train consisted of a locomotive and cars hired by Dorwin & Co. from defendant, and that they were being used for certain work on defendant's road, but defendant's responsibility with regard to them was no greater on those accounts than would have been that of any other lessor, if the locomotive and cars had been leased from some one else; and, since the lessees and their employés accepted and used them without complaint or objection, and with full knowledge of their condition, the obligation of the lessees to their employés, with respect to reasonably safe appliances, cannot be extended over to defendant. There is, however, no testimony whatever as to the age of the locomotive, and it is shown that it had been overhauled only a few days before the accident, and at the time of the accident was in good order. Brownfield, plaintiffs' principal witness, was asked: "Would you consider that locomotive safe or unsafe to use in construction work," to which he replied, "I would consider it safe."

There is some testimony for plaintiffs to the effect that there was a low place at a certain point in the track, and the witnesses attribute the accident to that circumstance. But Brownfield says that he saw it, for the first time, as he was running his train to the pit (from which they were getting the dirt), and slowed down in passing over it, and that, after he reached the pit, Robichaux, as conductor, and Sargent, as engineer, started their train back and met with the accident on the way, the fact being that each of the trains had passed over the track probably eight or ten times during that day before the accident happened. Martin was

the fireman on the engine that was pulling Robichaux's train, and he testifies that he observed the low place several days before, and that Robichaux must have known of it, that Robichaux came into the cab of the engine and offered to take his (Martin's) place and do the firing, and was just about to shovel coal into the furnace, when the accident happened. It also appears that the engine was running with the tender in front, and that, while Robichaux was acting as fireman, the fireman was doing nothing, and, the brakeman being on the rear end of the train, there was no one in front (on the tender) to keep a lookout. Defendant's witnesses, a number of them, testify that there was no such low place as that referred to by the others, and that, just at the place where the accident occurred, the track was unusually well built, being double tied. The judge a quo found that Robichaux was in the employ of an independent contractor for whose acts and omissions defendant was not responsible, and he also sustained the defense based on the exemption provision in defendant's charter.

We are of opinion that plaintiffs have failed to show any such contractual or other relation between defendant and their deceased son or any such failure by defendant to discharge any obligation due by it to their said son as would render it liable in damages as here claimed.

The judgment appealed from is therefore affirmed.