LAND, J. Defendant was convicted under an indictment charging him with the sale of intoxicating liquors for beverage purposes, and was sentenced to pay a fine of $150 and to serve 30 days in the parish jail, and, in default of payment of fine, to serve four months' additional imprisonment. As neither a fine exceeding $300 nor imprisonment exceeding six months has been actually imposed, this court is without jurisdiction to pass upon the matters urged by defendant on appeal. Constitution 1921, art. 7, § 10.

It is therefore ordered that the appeal be dismissed.

---

(95 South. 99)

No. 25710.

### DICK v. GRAVEL LOGGING CO., Inc.

(Dec. 29, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Master and servant** ☞367—**Logger paid by the thousand feet held a servant within Compensation Act, and not an independent contractor.**

Where a workman was a mere laborer employed as part of a logging outfit engaged in cutting down trees and sawing them into logs on the employer's timber holdings, and the employer required the workmen to cut their allotted strips clean and to cut the trees at a required distance from the ground and the logs into required lengths, and reserved the right to discharge workmen violating these requirements, and conducted a store, operated a commissary, and employed a physician, though workmen were not obliged to avail themselves thereof, the workman was a servant within the

152 LA.—32

Workmen's Compensation Act, and not an independent contractor, though paid by the thousand feet, and though, if workmen were lazy or failed to cut as many logs as the employer thought ought to be cut, they were not discharged; additional laborers being employed.

2. **Master and servant** ☞367—**All elements considered in ascertaining relation.**

To ascertain the nature and character of a workman's undertaking, to determine whether he was a servant or an independent contractor, all the elements entering into the employment must be considered.

3. **Master and servant** ☞367—**Interference determines relation.**

It is the right to interfere that establishes the difference between a mere servant and an independent contractor.

4. **Master and servant** ☞367—**Daily wages not essential to employment within Compensation Act.**

To bring an employment within the terms of the Workmen's Compensation Act, it need not be shown that he received wages in the sense of a daily rate of pay, and where a logger, paid by the thousand feet, was paid each week in accordance with a daily log scale, and had been in the employment for three weeks, there was a sufficient basis from which to determine the daily rate of pay.

5. **Master and servant** ☞348—**Compensation Act liberally construed.**

The Workmen's Compensation Act is humane in its purpose, and its provisions should be liberally construed to include all services that can be reasonably said to come within it.

Certified from Court of Appeal, Second Circuit.

Suit by Matthias C. Dick against the Gravel Logging Company, Incorporated, for compensation under the Workmen's Compensation Act for the death of plaintiff's son. From a judgment for defendant, plaintiff appealed to the Court of Appeal, which applied to the Supreme Court for instructions. Question answered in favor of plaintiff.

Kidd & Fuller, of Winnfield, for plaintiff.
J. C. Pearce, of Winnfield, for defendant.

By the WHOLE COURT.

ROGERS, J. The judges of the Court of Appeal for the Second Circuit certify the following question of law to this court asking for instructions under section 25 of article 7 of the Constitution, to wit:

"Statement.

"The suit is brought under Act 20 of 1914, and its several amendments, known as the Workmen's Compensation Act, and the plaintiff claims compensation for the death of his son, who was accidentally killed while he was engaged in cutting saw logs for the defendant company.

"The material facts are undisputed, and if plaintiff's son, at the time of his death, was a laborer or servant, and not an independent contractor, plaintiff is entitled to judgment.

"The facts pertinent to the question presented are as follows:

"At the time that plaintiff's son was killed, the defendant company was engaged in cutting and sawing logs and delivering them on log cars to the railroad for the Bodcaw Lumber Company, at Stamps, Ark. Whether it delivered or sold logs to any other company is not shown.

"For this purpose, it employed a number of men, which was large or small, according to whether a large or small number of logs were ordered.

"The men who cut and sawed the logs were paid 50 or 45 cents per thousand feet, board measure, according to whether they furnished their own tools, or whether the company furnished them.

"The men worked in pairs, choosing their own partners.

"The land was marked off into strips, and one pair of men would cut the logs from one strip, and then go to the next vacant strip. The men were required to cut the logs in lengths to correspond with the lengths ordered by the lumber company.

"The trees were required to be cut 18 inches from the ground, except where the tree was large, and in that case the stump was to be as high as the diameter of the tree.

"Each strip was to be cut clean, that is, all of the sawlogs must be taken from one strip before the men went to another strip. If the cutters violated this rule, they were required to return to the strip and cut it clean.

"The company conducted a boarding house and a store, or commissary, but the men had a right to board at the company boarding house, or elsewhere, as they saw fit.

"Any amount which the men owed the boarding house or store was deducted from their weekly pay roll.

"It was also optional with the men to pay a small fee for the company physician.

"Beyond requiring the men to cut the strips clean, to cut the logs the required lengths, and to cut the trees a certain distance above the ground, no supervision over them was exercised by the company. The men were free to put in as many hours a day, or as many days a week, as they chose.

"If the mill by which the logs were ordered notified the defendant that it did not need more than a certain number of logs, and there were enough logs on hand to supply the required number, the defendant would notify the men, and suspend the cutting for a few days until the mill could catch up.

"An employee of the company would scale the logs each day, and the cutters were paid off at the end of the week accordingly.

"The company reserved the right to discharge the men if they failed to cut the logs the required lengths, cut the trees too high from the ground, or failed to cut the strips clean. If any of the cutters were lazy, or failed to cut as many logs as the company thought he ought to cut, such a man was not discharged, but more cutters were secured.

"The foregoing statement of the facts with regard to the nature of the contract between plaintiff's son and the defendant company is the substance of the testimony of the then manager of defendant company, who was the only witness who testified as to that matter, and, as stated above, his testimony is not contradicted.

"It is the contention of defendant's counsel that the above facts bring the case within the rule announced in Helton v. Tall Timber Lumber Co., 148 La. 180, 86 South. 729, while plaintiff's counsel rely upon the recent case of Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 South. 350.

"Question: Under the facts stated, was plaintiff's son, at the time of his death, a servant of the defendant company, or an independent contractor?"

## Opinion.

[1, 2] The legal principles enunciated in Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 South. 350, rather than those announced in Helton v. Tall Timber Lumber Co., 148 La. 180, 86 South. 729, are determinative of the issues involved in this case.

In order to ascertain the nature and character of a workman's undertaking, all of the elements entering into the employment must be considered.

"An independent contractor is one, who carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to the results." 25 Cyc. 1546 et seq.

The deceased, in the instant case, was not carrying on an independent business; he had not undertaken to perform a specified piece of work; he had no assistants under his control; he was a mere laborer employed by the defendant company as part of its logging outfit engaged in cutting down trees and sawing them into logs in its timber holdings.

The land was laid off in strips, of certain sizes by the company who assigned the men to the strips, and was careful to see that they were cut clean, that the trees were cut the required distance above the ground, and that the logs were cut into the required lengths.

[3] The right was reserved by the defendant to discharge any workman who violated any of these requirements. It is the right to interfere that establishes the difference between a mere servant and an independent contractor.

The fact that a cutter who was lazy, or who failed to cut as many logs as the company thought he ought to cut, was not discharged, additional laborers being secured to do the work, does not alter the legal situation. That was a circumstance which went to the result of the work only and not the means by which the result was obtained.

The defendant conducted a store, operated a commissary, and employed a physician. It is true, the workmen were not obliged to avail themselves of these utilities; nevertheless, they were indicative of the nature and scope of the enterprise carried on by the company.

In Holmes v. Tennessee Coal & Iron Co., 49 La. Ann. 1468, 22 South. 403, this court held that a negro, owning his own shovel, and employed to unload coal from railroad cars, being paid for each car he unloaded, with the right to quit when he pleased, was a servant and not an independent contractor.

And in Shea v. Reems, 36 La. Ann. 966, the court said the test is to be found in the question whether one person "has placed himself under the direction and control of another, in such manner as to confer upon the latter the power of discharge for disobedience."

This test, however, is not the only method of determining the question, as was pointed out in the case of Bell v. Albert Hanson Lumber Co., supra.

A reference to the decisions of courts of other jurisdictions shows them to be in accord with the principles announced in the Bell v. Albert Hanson Lumber Co. Case. For instance, we find that:

"One employed to haul logs at a certain rate per hundred, at any time he desired, and over any roads he saw fit, is an employee and not an independent contractor." Hoosier Veneer Co. v. Ingersoll (Ind. App.) 134 N. E. 301.

"Men employed, not for any fixed time, to cut and remove standing timber, and paid according to the amount of timber they produce, are not independent contractors." Brown v. Leppo, 194 Ill. App. 243.

"A person who engaged in the timber cutting business, worked under an arrangement whereby he was paid a specified rate or price per piece of timber cut and exclusively given a certain territory in which to work, with freedom of working when he pleased, is a workman

and not a contractor." State v. District Ct., 128 Minn. 43, 150 N. W. 211.

And many others of the same tenor all applicable to the case in hand.

[4] We cannot agree with the argument that in order to bring the employment of the deceased within the terms of the Workmen's Compensation Act, it must be shown that he received "wages," meaning "a daily rate of pay" under the contract in force at the time of the hiring.

The workmen were paid off each week in accordance with a daily log scale made by an employee of the company. Decedent was really a worker, a laborer, and the amount he received for his labor, as was said in Rheinwald v. Builders' Brick Co., 168 App. Div. 425, 153 N. Y. Supp. 598, "was in an economic sense wages and not profits."

The daily rate of decedent's pay was easily calculable by averaging his weekly earnings. The briefs which are filed with and attached to the record show that he was in the defendant's employ nearly three weeks when he was killed. The first week his earnings were $18.84, the second week $28.32, and for the days of the third week he worked before his death, $20.27, a total of $67.43, and a weekly average of $22.48. This is a sufficient basis upon which to fix the compensation to which plaintiff is entitled under the act.

[5] The object of the statute is to shift the burden resulting from the accidents of our intense industrial activities from the employer to the general public. It is humane in its purpose; and its scope should be enlarged rather than restricted. Its provisions should be liberally construed, so as to include all services that can be reasonably said to come within them.

Under the narrow and restricted construction sought to be placed upon the statute by defendant's counsel, every workman employed to do piece work in shop, factory, home, or elsewhere would be classed as an independent contractor, although he is not more free from the control and direction of his employer than the most ordinary day laborer. If this construction was to obtain, it would only be a matter of a short while before the law would become a legal curiosity or a mere memory instead of the wise, beneficial, active, remedial statute its reasonable interpretation and application can make it.

For the reasons assigned, our answer to the question propounded is that plaintiff's son was at the time of his death a servant of the defendant company and not an independent contractor.

O'NIELL, J., concurs, but is of the opinion that the decision in Helton's Case, 148 La. 180, 86 South. 729, should be expressly overruled.