(131 So. 196)

**BECK v. DUBACH LUMBER CO., Limited, et al.**

No. 28067.

Nov. 3, 1930.

Rehearing Denied Dec. 1, 1930.

J. B. Crow, of Shreveport, for appellant.

Dhu Thompson, of Monroe, for appellees.

THOMPSON, J.

This an action for damages alleged to have been caused by the careless, negligent, and wrongful acts of the employees of the Dubach Lumber Company and Dubach Mill Company in cutting and removing the timber from certain lands of the plaintiff described in the petition.

It is alleged that the Dubach Lumber Company, having purchased certain timber on plaintiff's land, entered upon the land about January 1, 1924, for the purpose of cutting and removing the said timber to its mill to be manufactured into lumber, and continued such operations until the early part of September, 1924.

It is alleged that in cutting and removing said timber the said Dubach Lumber Company and the Dubach Mill Company, their officers, agents, and employees, negligently, unwarrantedly, and unnecessarily trespassed upon and injured and destroyed certain portions of petitioner's property, and grossly injured and tore down and destroyed property situated on said land wholly without excuse or justification.

It is further alleged that defendants, their officers, agents and employees, unnecessarily and negligently tore down petitioner's fencing, damaged the wire and posts surrounding his fields, hauled through and tore up the farm lands then in cultivation, obstructed petitioner's private roads leading from his home to

his farm and meadow, destroyed portions of his farm land, and grossly and negligently threw, and caused to be thrown and left, on the farm lands, numerous treetops which injured the farm land and prevented the land from being cultivated in 1924.

And further that the treetops thrown and left on the land through the negligence of defendants became ignited and produced a conflagration which destroyed a forest belonging to petitioner of 120 acres, and a peach orchard and two tenant houses.

The defendants, after certain exceptions were filed and overruled, answered denying any liability, and alleged that the cutting and removing of the timber from plaintiff's land was done by one George Jeffus and T. R. Woods, who were independent contractors, and for whose acts the defendants were not liable.

This defense was sustained by the trial court, and plaintiff's demand was rejected.

The evidence shows that the plaintiff on February 14, 1921, sold to the Dubach Lumber Company, for $1,100 cash, all of the merchantable timber on the lands described in the petition. The lumber company was allowed three years from September 11, 1922, in which to remove the timber.

The company was given the right of ingress and egress for teams and vehicles on said land and the right to construct tramways over said land for the purpose of removing the timber.

The Dubach Lumber Company owned a sawmill and planing mill which it leased to the Dubach Mill Company, and which the latter operated on its own behalf, paying for the logging of the mill and all expenses incident to the operations. The lumber company, however, furnished the timber to its lessee.

In July, 1922, the Dubach Mill Company sold to one George Jeffus all of the logging teams and all appurtenances thereto for the sum of $12,000, of which $2,000 was paid in cash, and the balance was to be paid in monthly installments of $500 each.

In the same contract Jeffus agreed to deliver, and the mill company agreed to accept, not less than 1,500,000 feet and not more than 1,750,000 feet of logs per month.

The price the mill was to pay for the timber delivered on its tramway was $3.50 per thousand feet for the first half mile haul, 37½ cents per thousand feet for each additional quarter of a mile haul up to one and one-half miles, and 25 cents for each quarter of a mile haul thereafter.

The mill company was to furnish from time to time specifications for the cutting of the timber. The contract was to continue for two years from its date, but, should either party desire to terminate the contract, notice in writing was required to be given the other party at least 60 days in advance of the termination of the contract.

A similar contract was entered into by the Dubach Mill with one T. R. Woods.

Under these contracts Jeffus and Woods caused to be cut and delivered to the Dubach Mill Company the timber from the plaintiff's land.

The evidence clearly shows that the two contractors had absolute and exclusive control of the cutting and delivery of the timber.

They furnished their own teams and logging outfit. They employed their own labor. At times as many as one hundred and fifty men were employed.

The laborers were carried on the pay rolls of Jeffus and Woods. The wages were fixed and paid by Jeffus and Woods.

The contractors owned and operated their own commissary, and neither the lumber company, nor the mill company exercised, or could exercise, under their contract with Jeffus and Woods, any control over them or over the men employed by them. They had no supervision whatever over the cutting and delivery of the timber on the tramway further than to fix the specifications and dimension of the saw logs, to scale and pay for the timber and to require that Jeffus and Wood comply with their contract.

In Corpus Juris, vol. 39, p. 1319, referring to the right of supervision, it is said that the fact that the right of supervision is reserved to the owner for the purpose of seeing that the specific work is done in compliance with the contract will not prevent the employee from being an independent contractor, and, as a consequence thereof, such reservation by the owner will not relieve the employee from being solely liable for his own negligence.

"It is only when the employer goes beyond the limits of that right and commits some affirmative act of negligence, as by taking some part in the performance of the work other than such general supervision as is necessary to insure its performance that he is chargeable."

In the instant case it is not pretended that the defendants themselves committed any actual or affirmative acts of negligence charged in the petition. The negligence, if such there was in the cutting and removal of the timber, was caused solely and exclusively by Jeffus and Woods and their own employees.

And our own courts have repeatedly held that the mere fact that a proprietor retains general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the con-

tractor carries out the stipulation of his contract, does not make him (the proprietor) responsible for the wrongs done to third persons in the prosecution of the work. Lutenbacher v. Mitchell-Borne Const. Co., 136 La. 805, 67 So. 888, 19 A. L. R. 206; Robichaux v. Morgan's L. & T. R. & S. S. Co., 131 La. 727, 60 So. 206; Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L. R. A. (N. S.) 632; Muldry v. Fromherz, etc., 142 La. 1087, 78 So. 126.

"A person who engages in hauling logs, under a contract at so much per 1,000 feet, and who supplies his own teams, employs and discharges his own labor, and is his own master in the matter of handling his outfit and of the method to be adopted in the execution of the contract, is an independent contractor, and his claim for damages for personal injuries sustained while so engaged is not within the purview of the Employers' Liability Act, No. 20 of 1914." Ryland v. Wheeler Lbr. Co., 146 La. 788, 84 So. 55.

In the case of Johnson v. Vincennes Bridge Co., 167 La. 108, 118 So. 820, where the plaintiff was employed to unload a carload of steel at $2 per ton, and to furnish all trucks and labor necessary for the work, and was not carried on defendant's pay roll, and defendant did not exercise any supervision over the work, it was held that he was an independent contractor.

The cases cited are not inconsistent with the ruling in Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99.

In that case the plaintiff was an employee of defendant in cutting saw logs. The plaintiff was paid by the defendant company, was controlled by the employer, and subject to be discharged by the employer and no other.

So, too, is the case of Bell v. Albert Hanson Lbr. Co., 151 La. 824, 92 So. 350, inapplicable

to the facts of the present case. The plaintiff Bell was a mere swamp laborer, being one of a gang of men constituting a part of the logging outfit of the sawmill. He received his pay directly from the company by whom he was employed.

He was directed in his work by the sawmill foreman, and had no one employed under him.

The facts in the case of Burt v. Davis-Wood Lbr. Co., 157 La. 112, 102 So. 87, are likewise different from the facts in the instant case. In that case Burt was employed by the sawmill company to deliver the manufactured product of the mill. The company pointed out the lumber to be hauled, directed the place of delivery and the person to whom the lumber was to be delivered. Burt was carried on the payroll of his employer the same as other laborers of the mill, and was paid on the regular pay days every two weeks.

In the case of Montgomery v. Gulf Refining Co., 168 La. 74, 121 So. 578, the defendant was held liable for a fire loss caused by the negligent act of a truck driver employed by the agent of the Gulf Refining Company. In that case one of the defenses made was that Jones who employed the driver of the truck to deliver the gasoline was an independent contractor, but the court found, in fact stated, that it was conceded that Jones was the servant or agent of the defendant company. It would have made no difference, however, if Jones had occupied the status of an independent contractor toward the Gulf Refining Company. One of the exceptions to the general rule of law which exempts a proprietor from liability for damages caused by the negligence of an independent contractor or his employee is that persons using dangerous instrumentalities in the prosecution of their business must observe the greatest care in the custody and use thereof.

It was upon this theory that the Gulf Refining Company was held liable.

In referring again to the defense that the company's agent Jones was an independent contractor, the court in the above case on page 80 quoted with approval from 39 Corpus Juris, pp. 1331–1333, as follows:

"A very important exception to the general rule exempting the contractee from liability for injuries caused by the negligence of an independent contractor or his servants is that, where the work is dangerous of itself, or, as often termed, is 'inherently' or 'intrinsically' dangerous unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do it."

"This exception is based upon the unusual danger to third persons, which inheres in the mere performance of the work itself, aside from any negligence on the part of the contractor or his servants, and the reason for the imposition of the liability is the duty of due consideration which one in a civilized community owes to his fellows and to the public, which duty precludes the ordering of that which if done will be inherently dangerous."

The doctrine on which liability was predicated in the Montgomery Case could not be made to apply to the facts of the present case. The instrumentalities employed by the contractors Jeffus and Woods in cutting and removing the timber from plaintiff's land were not "inherently" and "intrinsically" dangerous within the meaning of the rule on which the Gulf Refining Company was held liable.

The liability for the damages caused the plaintiff, if liability there is, is upon the independent contractors and not on the defendants.

The judgment appealed from is affirmed, at the costs of the plaintiff appellant.