**MERRITT et al. v. E. L. BRUCE CO. et al.**
No. 5152.

Court of Appeal of Louisiana.   Second
Circuit.
March 2, 1936.

Theus, Grisham, Davis & Leigh, of Monroe, and R. V. Reeves, of Oak Grove, for appellant.

McIntosh & Sims, of Oak Grove, for appellee.

HAMITER, Judge.

A school bus, carrying about sixty children, departed from Oak Grove High School on the afternoon of October 24, 1934, and proceeded in an easterly direction on the hard-surfaced Oak Grove-Lake Providence highway. After traveling about two miles, the bus was stopped on the south side of the road, its right wheels being on the shoulder, for the purpose of discharging Pauline Merritt, the nine year old daughter of plaintiffs herein and one of the occupants of such bus, who lived in that vicinity. When the driver opened the door on the right side of the bus, the child descended to the ground, reached back and obtained her books, proceeded around the front end of the bus, and then sought to cross the highway to the north side. Before reaching her immediate destination, she was struck down by a Ford V-8 logging truck, with trailer attached, driven by one Guy Mitchell, at a speed of from thirty-five to forty miles an hour. Death resulted to the child a few minutes after the accident.

The father and mother of Pauline Merritt seek judgment against the said Guy Mitchell and the E. L. Bruce Company. It is contended that the driver of the logging truck was the agent, servant, and employee of that company, and was acting within the scope of his employment at the time of the accident.

The defendants made separate answers. Guy Mitchell denied that he was negligent, and, in the alternative, averred that Pauline Merritt was contributorily negligent. E. L. Bruce Company asserted that such driver was not its agent, servant, or employee; that it had no connection with him and was in no way answerable or accountable for any of his acts. Alternatively, it denied his negligence, and, in the further alternative, pleaded contributory negligence on the part of the child.

An exception of no cause or right of action was tendered by E. L. Bruce Company on the date of its filing answer.

There was judgment in favor of each of the plaintiffs and against both defendants, in solido. From that judgment only E. L. Bruce Company has appealed. Plaintiffs have answered the appeal and asked that the amount of the judgment be increased.

As Guy Mitchell has prosecuted no appeal, the judgment against him is not before us for review. He cannot avail himself of the appeal taken by his codefendant. Lee v. Powell Bros. & Sanders Co., 122 La. 639, 48 So. 134.

The record is silent as to the disposition of the exception of no cause or right of action filed by E. L. Bruce Company. It has not been urged in this court, and we shall treat it as having been abandoned.

The first question presented for our consideration is whether or not Guy Mitchell was an agent, servant, or employee of the E. L. Bruce Company. If this be answered in the affirmative, we shall then consider the other matters involved; if answered otherwise, there will be nothing remaining for review. Unlike most cases of this kind, there is little dispute as to the facts herein.

The E. L. Bruce Company owned a tract of timber, in the parish of East Carroll, of approximately 1,700 acres. On or about May 1, 1934, one C. J. Jones entered into a verbal contract with such company for its

cutting, loading on trucks, hauling, and putting on the railroad cars at Sheldon, La. In payment for this, Jones was to receive an agreed price of $7 per thousand feet. Later, the agreement was amended to the extent that he would receive $8 per thousand feet for hauling the ash logs to Oak Grove. The contract was to last until the timber on the above-mentioned tract was removed. The logging equipment necessary for and used in connection with this work, except a loader belonging to E. L. Bruce Company, included camping outfit, teams, and wagons, and was the property of Jones. The men needed for the work were selected and employed by him or by the persons to whom he sublet portions of the work. He kept and arranged his own pay roll, paid the men employed by him, and determined the best manner of getting the logs out of the woods.

The cutting and sawing of the logs was sublet by Jones to one R. N. Hancock for an agreed price of $1 per thousand feet. Hancock hired, fired, and paid the cutters and saw hands, and scaled the logs for them. From eight to twenty men were used for this work. Hancock was paid by Jones according to defendant company's scaling.

With reference to the hauling, Jones hired men who owned or had the use of trucks, he owning none himself, and paid them a stipulated price per thousand feet. The haulers could work at any time that they saw fit, and were permitted to make as many loads per day as they wished.

None of the men working in connection with and in the fulfillment of the Jones agreement, whether haulers, cutters or sawyers, was hired or discharged by or carried on the pay roll of the E. L. Bruce Company.

Jones testified as a witness for plaintiffs, and his testimony regarding the control of his operations by the E. L. Bruce Company is impressive and significant. In substance, he stated that such company did not at any time attempt to direct or control his employees, except occasionally its scaler would order the cutting of a tree which had been overlooked, but in that event the workmen would consult Jones if any doubt existed; that the company had no right to direct the kind of trucks or labor to be used; and that he, Jones, was permitted to operate in the manner most economical to him.

Turning our attention to Guy Mitchell's employment, we find that during July, 1934, Jones requested Mitchell's mother to have him come to work, he having previously asked for a job; that Mitchell appeared shortly thereafter and contracted with Jones to haul logs, using the truck and trailer owned by Mitchell's father, for a stipulated price per thousand feet; that Mitchell's compensation was entirely paid by Jones; that the gasoline and oil which he used were obtained from Jones, and the price thereof deducted from his settlement checks; and that he stayed in the logging camp and used a tent owned by Jones. On several occasions Mitchell went to his home in Arkansas, and on his return he resumed the work. On the day of the accident, he went to Oak Grove for the purpose of putting air in his tires. He remained there ten or fifteen minutes, and was returning to the woods for another load of logs when the unfortunate incident occurred.

We have been greatly assisted in this case by counsel on both sides in that they have thoroughly and ably briefed the law and jurisprudence affecting the question presented. Plaintiffs' position is that Jones was carrying on his logging operations as an employee of defendant company, and that, consequently, Mitchell was also its employee. They invoke the rule of respondeat superior. Defendant company contends that Jones was an independent contractor; and that it had nothing to do with the employment of Guy Mitchell and was in no way responsible for his acts or actions.

The courts of this state have had occasion, in numerous cases, to determine whether a given state of facts showed the relationship of master and servant or that of owner and independent contractor. Most of such cases have been cited by counsel for the parties herein. In the light of the established jurisprudence, the facts of the case at bar disclose that C. J. Jones was an independent contractor.

A situation similar in many respects was presented to and considered by this court, on an exception of no cause or right of action, in the case of Eames v. Alexandria Contracting Co., 154 So. 510. The petition there alleged in substance that the defendant, while engaged in the construction of a graveled road, hired certain trucks for the purpose of hauling gravel, at a stipulated price for each yard hauled, such price varying according to the distance traveled. The trucks and drivers were under the supervision and control of defendant, whose officers and foreman instructed the drivers when and where the trucks were to be used and the gravel hauled. The owners of the trucks selected, hired, employed, and paid the driv-

ers. Plaintiff's son was killed by reason of the alleged negligence of the drivers of such trucks, and contended that the defendant company was liable under the respondeat superior doctrine. The judgment of the trial court, sustaining the exception of no cause or right of action, was affirmed; thus holding, in effect, that defendant, under the alleged facts, was an independent contractor. In the opinion, it was stated that the late case of Beck v. Dubach Lumber Co. et al., 171 La. 423, 131 So. 196, 197, was controlling.

We are of the opinion that the Beck Case is also decisive of the issues here presented. Although the contract in that case was more definite than the Jones contract, in that it provided a minimum and maximum monthly output and contained a fixed duration period, nevertheless the contract presently under consideration was sufficiently definite for operating purposes and for fixing and determining the legal relationship of the contracting parties. In the Beck Case the contractors furnished their own labor and logging equipment, had complete control of the cutting and hauling of the timber, carried their own pay rolls, and fixed and paid the wages of the workmen. The supervision of the lumber company was that of fixing the specifications and dimensions of the saw logs, scaling and paying for the timber, and requiring the contractors to comply with their contract. The Supreme Court therein reviewed the jurisprudence on the subject and held the parties in question to be independent contractors. With reference to the right of supervision by the lumber company, it stated: "And our own courts have repeatedly held that the mere fact that a proprietor retains general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the contractor carries out the stipulation of his contract, does not make him (the proprietor) responsible for the wrongs done to third persons in the prosecution of the work. Lutenbacher v. Mitchell-Borne Const. Co., 136 La. 805, 67 So. 888, 19 A.L. R. 206; Robichaux v. Morgan's L. & T. R. & S. S. Co., 131 La. 727, 60 So. 206; Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A.(N.S.) 632; Muldry v. Fromherz, etc., 142 La. 1087, 78 So. 126."

A portion of the syllabus in Ryland v. Harve M. Wheeler Lbr. Co., 146 La. 787, 84 So. 55, is also quoted in the opinion in the Beck Case, reading as follows: "A person who engages in hauling logs, under a contract at so much per 1,000 feet, and who supplies his own teams, employs and discharges his own labor, and is his own master in the matter of handling his outfit and of the method to be adopted in the execution of the contract, is an independent contractor, and his claim for damages for personal injuries sustained while so engaged is not within the purview of the Employers' Liability Act, No. 20 of 1914."

Plaintiffs' counsel call attention to certain testimony in the record, and argue that it evidences such a control of the operations as to make Jones a mere employee. They refer to portions showing that the operations were suspended by defendant on two different occasions, for a period of five or six days each, because of a resulting excess of logs; that it ordered the ash logs taken to Oak Grove, instead of to Sheldon as originally agreed, and for this change Jones was paid an additional $1 per thousand; that if the workmen failed to cut certain trees, such trees were ordered cut by defendant's scaler; that "cull" logs were rejected; and that when the log trucks reached the agreed destinations, an employee of defendant company selected the particular spot for the unloading. As we view it, these are matters of general supervision affecting the results to be accomplished, and do not indicate control of the means and manner of the performance of the contract. In 14 Ruling Case Law, p. 68, we find the rule relating to control of result as distinguished from that of means of performance to be well stated, as follows: "As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control,—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof; where the employee represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor."

The fact that Jones was permitted by defendant to use its loader in the operations, and some of its lumber in building roads, does not destroy his status as an independent contractor. Johnson v. Vincennes Bridge Co., 167 La. 107, 118 So. 820; Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A.(N.S.) 632.

Jones was required by defendant company to carry compensation insurance for his employees, and the premiums were deducted from the contract settlements made with him. Plaintiffs contend that this constituted a recognition of agency. It appears to us that this requirement was for the purpose of affording protection to defendant company by reason of that provision of the Workmen's Compensation Law (Act No. 20 of 1914, § 6, as amended by Act No. 85 of 1926) which makes the principal liable to an employee of a subcontractor performing work incident to the trade, business, and occupation of the principal.

There is testimony to the effect that for a period of eighteen days after the commencement of the contract, Jones obtained gasoline and oil from the Standard Oil Company of Louisiana on the credit of E. L. Bruce Company. However, the testimony also discloses that this arrangement was only temporary, and was necessitated by the fact that Jones enjoyed no credit in Louisiana when the work commenced. At the end of such period, his personal credit was established, the gasoline and oil previously purchased was paid for by him, and thereafter all such products were obtained and charged in his name. This transaction could have no effect on the legal relationship of the parties.

Plaintiffs' counsel assert that the decision of Goetschel v. Glassell-Wilson Co., Inc., et al., 13 La.App. 424, 127 So. 81, decided by this court, is applicable. That case is distinguishable in several respects; particularly, in that the employee there received nothing more than his regular weekly salary. He sought to make no profit on the work, or on the wages of the workmen employed by him. His contract was clearly a subterfuge.

Our attention has also been directed by plaintiffs' counsel to the cases of Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99; Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 So. 350; Burt v. Davis-Wood Lbr. Co., 157 La. 111, 102 So. 87; Alexander v. Latimer, 5 La.App. 41; Beebe v. McKeithen Const. Co., 5 La.App. 179; and Powell v. Spencer Bros., 5 La.App. 218. The first three of these cases were reviewed in Beck v. Dubach Lumber Co., supra; and the remainder discussed in Eames v. Alexandria Contracting Co., supra. There they were held to be inapplicable, and they are not applicable here.

The case of Crysel v. Gifford-Hill & Co., 158 So. 264, decided by this court, is cited and quoted from by counsel for all parties herein. The opinion refers to and follows the ruling in Beck v. Dubach Lumber Co., supra, and is more favorable to defendant company than to the plaintiffs.

Although our profound sympathies go out to the mother and father who have been tremendously saddened by reason of the heartrending accident in question, we are unable to hold the defendant company liable in damages as requested. Even if Guy Mitchell was grossly negligent, and such was the proximate and sole cause of this regrettable death, under the well-established jurisprudence he was not an agent, servant, or employee of the E. L. Bruce Company.

As the judgment against Guy Mitchell is not before us for review, a discussion of the matter of negligence would serve no useful purpose.

Accordingly, and for the reasons herein assigned, it is ordered that the judgment appealed from be annulled, avoided, and reversed as to E. L. Bruce Company, and that said judgment be affirmed in all other respects; the plaintiffs shall pay the costs of this appeal.