**ALEXANDER et al. v. FROST LUMBER INDUSTRIES, Inc.**

Civ. A. No. 2503.

United States District Court
W. D. Louisiana, Shreveport Division.

Feb. 1, 1950.

Wellborn Jack, Shreveport, La., Ashley J. Gold, Shreveport, La., and Allen, Smith & Neal, Houston, Tex., for plaintiffs.

Browne, Browne & Bodenheimer, Shreveport, La., and R. F. Caldwell, Shreveport, La., for defendant.

PORTERIE, District Judge.

The individual plaintiffs are suing for damages allegedly suffered by them by reason of a collision between a log truck

driven by a Negro driver, Vannie Gilbert, and a small stripped-down Chevrolet car driven by one, Clyde Adkison, in which collision, Clyde Adkison, was killed and three other occupants of his car were injured. The collision took place on or about October 4, 1947, in DeSoto parish, south of Logansport, Louisiana.

Plaintiffs allege that the logging truck and trailer, though not owned by Frost Lumber Industries, Inc., was hauling logs for Frost Lumber Industries, Inc., a Texas corporation, or Frost Lumber Industries, Inc., a Missouri corporation, and that in either event, the driver was an employee of one or the other of said corporations and was acting in the course and scope of his employment.

Plaintiffs then allege that the driver of the truck was negligent and his negligence was imputed to the alleged employer, Frost Lumber Industries, Inc., and therefore, plaintiffs were entitled to recover damages in large amounts.

In short, the question on the motion for a summary judgment is whether or not the logging truck and trailer was driven at the time of the accident by the Negro as an employee of Frost Lumber Industries, Inc., or as an employee of Herman H. Jones, an independent contractor.

The undisputed facts of this case are, as follows:

1. On or about September 14, 1947, Berl Richardson, as an agent for Frost Lumber Industries, Inc., entered into the contract with Herman H. Jones to cut timber and haul the logs of a certain size and grade from a timber strip located in the Castleberry League in Shelby County, Texas, just across the river from DeSoto Parish and to deliver the logs at the yards of the Frost Lumber Industries, Inc., at its mill located near Mansfield, Louisiana.

2. Herman H. Jones was to use his own equipment, furnish his own labor, and had the exclusive right to cut all the timber from a designated strip in Castleberry League. He cut and hauled at his own expense at $18.00 per thousand feet of logs cut and hauled from the tract to the mill located near Mansfield, Louisiana.

3. In keeping with the contract, Jones furnished all labor and equipment and was cutting and hauling to the Mansfield mill and there stacking the logs in accordance with the contract. He hired and paid his own employees, furnished his own gasoline and had full control and supervision over the employees. He maintained his own trucks and could generally use his own time, providing the work was done during reasonable hours, could select his own route, and, in fact, at the time of the collision he was not taking the usual direct route to Mansfield, but was taking a more southerly route that was considered the better highway at the time.

4. Jones had other contracts for hauling logs, etc., and Frost Lumber Industries, Inc., preferred to let this kind of work out by contract, and had adopted this business custom for years at its various sawmills. Either party to the contract could terminate it at will.

5. Richardson, for Frost Lumber Industries, Inc., hired other owners of trucks in a similar manner. He would stay in the woods and divide the timbered area into alternating strips from which the various truckers hauled. He would take care that the truckers did not leave any fit trees uncut and that old rotten trees were not hauled.

6. The logging superintendent, Richardson, was a truck hauler himself, owned and operated two trucks as and for his own. All the log-hauling contractors, including Mr. Richardson, pooled together their labor in constructing a crude bridge for their mutual convenience over a near stream which enabled them to shorten the haul trip about eleven miles. Frost Lumber Industries, Inc., furnished gratis the logs, the two-inch decking, and the bents for the bridge. Richardson served as a go-between in this bridge matter; the economy of the bridge was apparent to all the log-hauling contractors. The bridge had nothing to do with the price of $18.00 per thousand; it was a general saving to the contractors.

The Louisiana courts have repeatedly held that a person who engages, eith-

518

er verbally or in writing, to haul logs at so much per thousand feet delivered to the mill, or other agreed destination, and who furnishes and maintains his own hauling equipment and employs his own help, without control and direction by the owner of the logs, other than such general supervision as may be required to see that the work is performed in compliance with the contract, is an "independent contractor", and is alone liable for his own acts of negligence, or those of his employees, in performance of such work. Miller v. Wyatt Lumber Mfg. Co., La.App., 3 So.2d 656; Wilson v. Wyatt Lumber Mfg. Co., La. App., 3 So.2d 567; Hoagland v. Wyatt Lumber Mfg. Co., La.App., 3 So.2d 568 (2 cases); Moore, for Use of Chriceol, v. Cochran & Franklin Co., La.App., 5 So.2d 33; Merritt v. E. L. Bruce Co., La.App., 166 So. 195; Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196; Johnson v. Vincennes Bridge Co., 167 La. 107, 118 So. 820; Ryland v. Harve M. Wheeler Lumber Co., 146 La. 787, 84 So. 55; Eames v. Alexandria Contracting Co., La.App., 154 So. 510.

■ The fact that the sawmill company had the logs cut in the woods, furnished the teams to be used in loading the logs on the log truck of the "independent contractor" did not change the relationship so as to make the "independent contractor" an "employee". Miller v. Wyatt Lumber Mfg. Co., La.App., 3 So.2d 565. The manner of payment of the independent contractor—even though he was advanced the funds by the sawmill company—is immaterial and does not affect their relationship as owner and independent contractor. See, Crysel v. Gifford-Hill & Co., La.App., 158 So. 264, 268 (where advances were made from time to time to the contractor); also, Miller v. Wyatt Lumber Mfg. Co., supra (where $25.00 was paid to the truck driver for the benefit of the truck owner).

■ "And our own courts have repeatedly held that the mere fact that a proprietor retains general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the contractor carries out the stipulation of his contract, does not make him (the proprietor) responsible for the wrongs done to third persons in the prosecution of the work. Lutenbacher v. Mitchell-Borne Const. Co., 136 La. 805, 67 So. 888, 19 A. L.R. 206; Robichaux v. Morgan's L. & T. R. & S. S. Co., 131 La. 727, 60 So. 206; Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A.,N.S., 632; Muldry v. Fromherz, etc., 142 La. 1087, 78 So. 126." Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196, 197.

■ Where the truck owner furnished the truck and paid the wages of its helper and cost of operation of its equipment and the truck owner was privileged to make as many trips and at such times as he saw fit, his compensation being determined by the amount of timber delivered at the mill, the logging contractor's relationship with the sawmill company was that of independent contractor, and the truck owner was not an agent or an employee of the sawmill company. Moore v. Cochran & Franklin Co., La.App., 5 So.2d 33.

Where a log truck owner had a verbal contract with the sawmill company, which was somewhat vague, whereby he was to cut and haul logs from a 1700-acre tract and he was to furnish his labor and equipment and was to deliver logs at sawmill at $8.00 per thousand feet and had control of time and manner of the use of the equipment and route to be taken, although the sawmill company, through its timber scaler, would supervise the cutting of the logs and the size and grade of same, and retain general supervision, otherwise to see that the contract was carried out as agreed, the relationship of owner and independent contractor existed between the parties. Merritt v. E. L. Bruce Co., La.App., 166 So. 195, 198.

The test of the degree of control forming the relationship of independent contractor and owner is described in Merritt v. E. L. Bruce Co., supra, as follows: "Plaintiffs' counsel call attention to certain testimony in the record, and argue that it evidences such a control of the operations as to make Jones a mere employee. They refer to portions showing that the operations were suspended by defendant on two different occasions, for a period of five

---

or six days each, because of a resulting excess of logs; that it ordered the ash logs taken to Oak Grove, instead of to Sheldon as originally agreed, and for this change Jones was paid an additional $1 per thousand; that if the workmen failed to cut certain trees, such trees were ordered cut by defendant's scaler; that 'cull' logs were rejected; and that when the log trucks reached the agreed destinations, an employee of defendant company selected the particular spot for the unloading. As we view it, these are matters of general supervision affecting the results to be accomplished, and do not indicate control of the means and manner of the performance of the contract. In 14 Ruling Case Law, p. 68, we find the rule relating to control of result as distinguished from .that of means of performance to be well stated, as follows: 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control,—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof; where the employee represents the will of the employer as to the results of the work but not as to the means or manner of accomplishment, he is an independent contractor.' "

The facts and circumstances relating to the contract between the sawmill company and owners of logging equipment as presented to the court in this case are not shown to be a new and novel question for the Louisiana courts. In fact, the same question involving similar facts has been repeatedly brought before our courts in suits for damages, and the Louisiana courts, both the Supreme Court and Courts of Appeal, have repeatedly held that an owner or principal was not liable for the torts and negligent acts of operators of log trucks who furnished and maintained their own equipment and hauled logs to a given destination for so much per thousand feet. Our Supreme Court, in Beck v. Dubach Lumber Co., 171 La. 423, 432, 131 So. 196, after reviewing all prior jurisprudence as to tort actions and workmen's compensation cases, recognized the rule in tort actions that a proprietor could not be held liable where he did not control the manner and method of the operation of independent owners of log trucks who maintained their own trucks and equipment, and could work or quit when they desired, and were paid on a basis of so much per thousand feet delivered at the mill.

The Beck case, supra, was said to be the controlling case on the question by the court in Eames v. Alexandria Contracting Co., La.App., 154 So. 510, 513. In the latter case the court said: "In that case [Beck case, supra] the contractors had absolute and exclusive control of the cutting and delivery of the timber. They furnished their own teams and logging outfit. They employed their own labor. The laborers were carried on their pay rolls, and the wages were fixed and paid by them. The mill company had no supervision over the cutting and hauling other than to fix the dimensions of the saw logs, to scale and pay for the timber hauled, and require that the contractors comply with the terms of their agreement. Such general supervision does not affect the relation of independent contractor. In that case, as in the present one, it is not pretended that defendants themselves committed any acts of negligence. In the present case it is specifically set out that such acts were committed by men selected, employed, and paid by McCain and Edwards. In the Beck case defendants were held to be independent contractors. We are not able to distinguish the facts in that case from those alleged in the present one, and therefore conclude that the exception of no cause or right of action was correct-

ly sustained as to Alexandria Contracting Company, Inc."

The case of Miller v. Wyatt Lumber Mfg. Co., La.App., 3 So.2d 565, 567, besides supporting generally the principle of the other cases we have cited, particularly shows that the same rule and doctrine apply even if the truck driver "* * * had the right to cease hauling for defendant entirely at any time and defendant had the right to order him not to haul any more whenever it so desired."

So, the motion for a summary judgment is sustained.

Plaintiffs have cited a host of cases in their favor, all of which involve the Louisiana Workmen's Compensation Act, except three: Davidson v. American Drug Stores, La.App., 175 So. 157 (a drug deliverer on a motorcycle); Gallaher v. Ricketts, La.App., 187 So. 351 (a deliverer of newspapers in an automobile); Olano v. Leathers, La.App., 2 So.2d 486 (a hauler of gravel from a river barge—patently a servant).

Differently, however, the cases furnished us by defendant, supra, are all straight tort cases—with no legal relation established under the Employers' Liability Act, Act No. 20 of 1914.

Paragraph 8 of Section 3 of the Louisiana Workmen's Compensation Act, La. Act No. 20 of 1914, as amended by La. Act No. 85 of 1926, Dart's Stats.1939, § 4393, provides: "A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as an independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this Act. The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

The Louisiana Supreme Court, in the early case of Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99, 101, said in part:

"The object of the statute is to shift the burden resulting from the accidents of our intense industrial activities from the employer to the general public. *It is humane in its purpose, and its scope should be enlarged rather than restricted. Its provisions should be liberally construed, so as to include all services that can be reasonably said to come within them.* (Italics ours.)

"Under the narrow and restricted construction sought to be placed upon the statute by defendant's counsel, every workman employed to do piece work in shop, factory, home, or elsewhere would be classed as an independent contractor, although he is not more free from the control and direction of his employer than the most ordinary day laborer. If this construction was to obtain, it would only be a matter of a short while before the law would become a legal curiosity or a mere memory instead of the wise, beneficial, active, remedial statute its reasonable interpretation and application can make it."

It would seem, therefore, that in actual rulings a distinction has been made; there is a substantial difference.

This is not a new thought, for our jurists have considered it before. The case of Allgood v. Loeb, La.App., 22 So.2d 568, 573, considers this point well: "Plaintiff contends that the foregoing definition of an independent contractor is inapplicable to him for the reason that he is not suing for workmen's compensation but is proceeding in tort under Article 2315 of the Civil Code. This proposition is based on the theory that, whereas the courts have adopted a liberal interpretation of the compensation act so as to include within its provisions many claimants who would not ordinarily be considered as employees, such an interpretation is inapplicable here as he is not seeking the benefits of that law. In support of this theory, plaintiff's counsel rely upon our decision in Marquez v. Le Blanc, La.App., 143 So. 108, where Justice Higgins of the Supreme Court (then a member of this court) observed that there was a lack of consistency in the jurisprudence concerning employees and independent contractors and that, whereas the courts had adopted a liberal construction in favor of

claimants in compensation cases, a strict interpretation and construction of the rules respondeat superior had been applied in tort cases. And it was there concluded that, since the claim was for damages, the jurisprudence in tort cases would be applied rather than the liberal pronouncements in compensation matters."

So, we are of the view that there is quite a difference in mental approach.

Another very instructive case, though it involves the Employers' Liability Act only and not the law of Louisiana torts, is the case of Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767. The facts which the Court used to qualify plaintiff as a servant were these.

The defendant, a commercial partnership, was under contract with the United States Government to deliver limestone for road building at an army camp. Defendant owned no trucks; it arranged with truck owners for the hauling; it would supervise the loading of the trucks at the pit and the unloading at the camp. Plaintiff furnished his own truck and bought his gas and oil from defendant, allowing the cost to be deducted from his earnings; he was paid 70 cents per cubic yard for the hauling and was obliged to keep his truck running 24 hours a day; except perhaps on Sundays. Plaintiff was allowed to and did hire drivers and also drove himself. Plaintiff was not employed for any definite length of time nor for the hauling of a definite quantity of limestone. Defendant could terminate the contract at any time.

While talking with another truck driver who had parked his truck out of the way of traffic on the highway between the pit and the camp and awaiting to relieve one of his drivers at midnight, plaintiff and another were struck by a swerving high-speed automobile which proceeded on its way. Plaintiff, admittedly, was totally and permanently disabled.

Suppose the facts were entirely different and the reckless driver had been hurt and the alleged servant was in the wrong—that is, negligent—Could this driver sue the master of plaintiff in tort? Would it not then stand to reason, law and justice, under those facts, that the alleged master of this servant would have been held not accountable and that the relation was that of an independent contractor?

When the two vehicles in this case collided on the highway, there could not be and there was not any control or supervision by Frost Lumber Industries, Inc., the supposed master. The accident occurred when the alleged tort-feasor certainly was acting independently—free from any control. Under the jurisprudence initially given at the beginning of this opinion, the relationship is characterized as being one of independent contractor and not that of servant. We are constrained to decide and hold that Jones was an independent contractor at the time that the accident occurred.

Accordingly, the motion for summary judgment has to be sustained and judgment will be so signed.

Pretermitting the above and approaching the case from a different perspective, we quote from the Allgood case, supra, 22 So.2d at page 571: "There is a multitude of cases in the jurisprudence of this State involving the question of whether one employed to perform services for another occupies the status of independent contractor or employee. And the appellate courts, in searching for the correct solution, have applied certain tests or formulae by which they have been guided in reaching a conclusion on the particular state of facts involved in each case. The tests used by the courts have not been entirely uniform and it is safe to say that no exact formula or guide can be adopted which will govern the result to be reached but that each and every decision must stand upon the facts and circumstances presented."

With this idea in mind, we shall analyze the facts of the numerous cases cited by the plaintiffs in support of their case with those of the instant case.

(1) We quote the following from the case of Alexander v. Latimer, 5 La.App. 41, 43, which arose under the Employers' Liability Act: "The rule is to construe the statute so as to include all services which can be reasonably said to come within its provisions (Dick v. Gravel Logging Co.,

152 La. [993], 994, 95 So. 99), and considering· that defendant did have the right to control the plaintiff, at least as to the route over which he should haul and the place where he should deliver the gravel, we are of the opinion that plaintiff cannot be said to have been an independent contractor, although it appears that the compensation being received by him included payment for the use of the truck (Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87)."

(2) We quote the following from Powell v. Spencer Brothers, 5 La.App. 218, 219:

"We are of the opinion, however, that the plaintiff, having been employed to haul the gravel with a motor truck, and the defendants having instructed him as to the places of loading and unloading, shows that defendants did have control of the means and manner by which the work was to be accomplished, and that they did have control of the plaintiff during the time he was working and the right to discharge him; hence the plaintiff was an employee rather than an independent contractor and the mere fact that he furnished and maintained the truck does not alter the situation. (Dick v. Gravel Logging Co., 152 La. [993], 994, 95 So. 99; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; D. A. Alexander v. Belton Latimer, 5 La.App. [41]; 13 Advance Reports 41.)"

(3) In the case of Litton v. Natchitoches Oil Mill, La.App., 195 So. 638, which interprets the Employers' Liability Act, all the trucks except a few belonged to the Oil Mill; the trucks were furnished by the drivers and the drivers were to stand all additional expenses, without any number of hauling trips being fixed and without any particular allotment in the quantity of seed to be hauled.

In the instant case, the Frost Lumber Industries, Inc., did no trucking at all; allocated specific strips of timber to each particular truck owner; had no control of the truck driver or over his doings—all points of material difference to the foregoing cases, analyzed at (1), (2), and (3), supra.

The next case we have to consider is that of Collins v. Smith, La.App., 13 So.2d 72,

73 which is another action under the Employers' Liability Act. The facts are too numerous to set out in detail; but the main difference between that case and the instant case is that "No specific quantity of wood was set apart for him to haul."

In the instant case there was a definite strip or acreage of timbered land, which the hauler had for himself and himself alone to cut and haul from. That fact alone is sufficient to place this case in the category of an independent contract between the Frost Lumber Industries, Inc., and the hauler, Jones.

The case of Felts v. Singletary, La.App., 143 So. 68, is differentiated from the facts of the instant case in that at page 70, we find: "Obviously, plaintiff, under his agreement, had no specified piece of work to perform, no particular job to be executed, which are the usual characteristics of contracts constituting the employee an independent contractor."

The situation is just the opposite in the instant case.

We do admit that in the case of James v. Hillyer–Deutsch–Edwards, 15 La.App. 71, 130 So. 257, 258, after a full quotation of Paragraph 8 of Section 3 of the Louisiana Workmen's Compensation Act, La. Act No. 20 of 1914, as amended by La. Act No. 85 of 1926, Dart's Stats. 1939, § 4393, quoted supra, there is the following language: "This enactment did nothing more than give a legislative fiat to the existing law and jurisprudence as to who were independent contractors. If the manner of doing the work was subject to the control of the party for whom it was being done, the party doing it was working as an employee of the party having the work done. The right to control the manner of doing the work has always been regarded as indicating work done in the employment of another."

Since Jones had the timber of a specified area to cut and haul and the manner of doing the work from the moment he touched a log at the beginning to the time he unloaded it at the mill site, he was not under the control of Frost Lumber Industries, Inc. Conclusively, Jones was working as an in-

dependent contractor and should be so classified.

We quote from Lee v. Mark H. Brown Lumber Co., 15 La.App. 294, 131 So. 697, 698: "The fact that defendant would select and direct the place to which the logs should be hauled when the trucks were loaded, all of which was dependent upon the pleasure of defendant indicates there was not any contract for want of an object or cause (articles 1779, 1883, 1886, Civ. Code) until the logs were selected and loaded on the trucks and directions given relative to the place where the logs should be delivered, and, as we see it, the defendant had control of everything except the manner in which the trucks were to be driven."

The different facts presented in the Lee case, supra, are that (a) the logs were in a pile—not segregated; (b) no particular logs or any particular pile of logs was fixed to be hauled by the truck driver; (c) the mill owner specified each particular log as the trucks were loaded; and, finally, (d) the owner directed to which place this particular load was to be hauled, either Lake Providence or Oak Grove. There is no such itemized control in the instant case by Frost Lumber Industries, Inc.

Another action under the Employers' Liability Act is that of McKay v. Crowell & Spencer Lumber Co., La.App., 189 So. 508. There again is that general common differentiation that the mill owner had a close and special control up to the last minute of just what logs were to be hauled. The hauler had nothing to do with the cutting of the logs. In the instant case a specified area was reserved for the cutting and hauling of each truck owner—there was an acreage dedicated in the hauler's favor.

So, from our analysis of the cases furnished the court by plaintiffs, we determine very clearly that they are all cases wherein the Employers' Liability Act is involved, which means liberal interpretation of the facts so as to permit, for humane reasons, a servant to recover from his master in the case of suffering injury while working, even though he might have been contributorily negligent. The instant case does not involve the Employers' Liability Act; it involves an action in tort. These plaintiffs are attempting to sue the Frost Lumber Industries, Inc., as alleged masters of allegedly neglectful employees of an independent contractor, Jones.

The facts are well established; there is no genuine issue as to any material one. There is but one conclusion of law: Jones is an independent contractor; therefore, there is no question for the jury.

Accordingly, the Frost Lumber Industries, Inc., having nothing to do with the instant case, the motion for a summary judgment must be sustained.

Judgment to that effect will be signed upon presentation.