No. 2618

Second Circuit

HARRIS v. DOBSON BROS.

(January 28, 1927. Opinion and Decree.)
(February 24, 1927. Rehearing Refused.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant Par. 154, 156.**

One who loads railroad ties into railroad cars for a fixed price for each tie loaded, working when and how he pleases and not subject to the dictation of him for whom the loading is done, is an independent contractor, and not an employee of the person for whom the work is being done.

Appeal from the Tenth Judicial District Court of Louisiana, Parish of Natchitoches. Hon. John F. Stephens, Judge.

Action by W. C. Harris against Dobson Brothers, et al.

There was judgment for plaintiff and defendants, Dobson Brothers, appealed.

Judgment reversed and suit dismissed.

J. W. Jones, Jr., of Natchitoches, attorney for plaintiff, appellee.

J. O. Gunter, of Natchitoches, attorney for defendants, Dobson Brothers.

Phanor Breazeale, of Natchitoches, attorney for defendant, appellant, International Creosoting and Construction Company.

WEBB, J., concurs.

STATEMENT OF THE CASE

REYNOLDS, J. This is a suit under the Employers' Liability Act (Act 20 of 1914 and amendments) by W. C. Harris against Dobson Brothers, a commercial partnership composed of R. R. Dobson and E. P. Dobson, domiciled in Natchitoches Parish, and the International Creosoting & Construction Company, hereinafter referred to as the "company", a foreign corporation domiciled at Texarkana, Tex.

The petition was filed July 1, 1925.

It alleges that Dobson Brothers is a commercial partnership composed of Ross R. Dobson and Eugene P. Dobson and that the International Creosoting & Construction Company is a foreign corporation domiciled at Texarkana, Texas, and doing business in Louisiana, and that plaintiff:

"* * * was an employee of the said Dobson Brothers and the said International Creosoting & Construction Company to load ties into cars on the tracks of the Louisiana & Arkansas Railway Company at Chestnut, Louisiana, for a price of three (3) cents for pine and gum ties and four (4) cents for white oak and red oak ties. * * * That, while so employed, he shows that on the 31st day of December, 1924, and while carrying on his shoulder a crosstie to be placed in the said cars the

running board used by your petitioner and others in carrying ties to said cars were creened and your petitioner's feet slipped and your petitioner fell to the ground and the tie being carried by your petitioner fell on his left leg and broke the bone of said leg about half-way between the knee and hip joint, thereby severely injuring your petitioner's leg and causing great impairment thereof permanently. That said injury and impairment has been up to date and will be a temporarily total injury for at least a period of fifty-two (52) weeks, beginning on the 31st day of December, 1924, and for which they owe your petitioner in solido 65% of his weekly wages, or the sum and for the weekly compensation of twenty-three and 40-100 dollars per week for said stated period; and that said injury and impairment will be a temporarily partial injury or disability for a period of at least fifty-two weeks beginning at the end of your petitioner's temporary total disability, or on December 31st, 1925, and for which they owe your petitioner the sum of or the weekly compensation of seventeen and 55-100 dollars per week for at least a period of fifty-two weeks, or the difference between what he will be able to earn at said time and that which he was earning at the time of the injury, which your petitioner alleges said difference will be four and 50-100 dollars per day."

He also claimed surgical and medical expenses of $100.00.

The prayer is for judgment for $23.40 a week for 52 weeks, beginning December 31, 1924, and for $17.55 per week for an additional 52 weeks, beginning December 31, 1925, and for the $100.00 for medical and surgical bills.

Endorsed on the petition is an order signed by the District Judge on July 1, 1925, commanding the defendants to show cause before him at 10 o'clock A.M. on June 25, 1925, why judgment should not be rendered against them in favor of the petitioner as prayed for.

On July 2, 1925, ordinary citation for both defendants was issued to the sheriff of Natchitoches parish.

Service was had on Dobson Brothers on July 3, 1925.

On July 7, 1925, the sheriff returned the petition and citation unserved as to the 'company" for the reason that:

"After diligent search I was unable to find any domicile of the International Creosoting & Construction Co. or any legal representative of said company in Natchitoches parish, La."

On July 8, 1925, the District Judge signed an order directing that service on the "company" be had by delivering the petition and citation to the secretary of state.

Ordinary citation, dated July 7, 1925, was thereupon issued:

"To International Creosoting and Construction Co.
"Thru Secretary of State,
"Of the Parish of East Baton Rouge."

And sent to the sheriff of the Parish of East Baton Rouge.

The citation directs:

"You are hereby cited to appear in the office of the clerk of the said court, in the town of Natchitoches, of the parish aforesaid, and comply with the demands contained in the petition, of which a copy accompanies this citation, or deliver your answer thereto in writing in said office in ten days after the service hereof, with one additional day for each ten miles between your residence and the office of said clerk."

The sheriff of the parish of East Baton Rouge made return that:

"On the 9th day of July, 1925, I served said copies on the within named International Creosoting & Construction Co. through Secty. of State in the Parish of East Baton Rouge, Louisiana, by handing said copies to R. H. Flowers, Asst. Secty. of State in person in the office of the Secty. of State."

On July 11, 1925, defendants, Dobson Brothers, filed an answer denying the allegations of the petition and specially denying that plaintiff was employed by them.

On July 20, 1925, the "company" filed an exception to the jurisdiction of the court ratione personae, alleging that it was a foreign corporation and that it was not doing and had not done any business in Louisiana.

And, reserving its rights under the exception to the jurisdiction of the court ratione personae, should that exception be overruled, the "company", on the same day, filed an exception to the citation.

And, reserving its rights under this execution also, should it be overruled, the "company", on the same day, filed an answer in which it reiterated that it was a foreign corporation domiciled in Texarkana, Texas, and that it had not done and was not doing business in Louisiana, denied the allegations of the petition and specially denied that plaintiff was its employee.

It also filed a plea of prescription, alleging that the first notice it had of the alleged accident to plaintiff was a letter dated at Chestnut, Louisiana, July 13, 1925, written and signed by defendants, Dobson Brothers, more than six months after the alleged accident to plaintiff, and that, therefore, any right of action which plaintiff might have had against him for his alleged injuries was lost by reason of his failure to notify it thereof within six months after the accident happened.

On July 20, 1925, filed a motion for judgment against defendants on the face of the petition, alleging:

"That he filed suit in the above numbered and styled cause on the 1st day of July, 1925. That service was made on the defendants in said petition as follows:

"On Ross R. Dobson and Eugene F. Dobson on the 3rd day of July, 1925.

"On the International Creosoting & Construction Company on the 9th day of July, 1925, by the Secretary of State.

"That neither Ross R. Dobson individually, Eugene P. Dobson individually, nor the International Creosoting & Construction Co. has made any appearance nor filed an answer on this date, July 20th, 1925; that more than seven days have elapsed since the service on either the defendants mentioned above; all of which he directs the attention of this Honorable Court."

The minutes of court show that on July 24, 1925, hearing on the motion for judgment on the face of the petition was continued till the next day.

On July 25, 1925, the exceptions to the jurisdiction ratione personae and citation were heard and both were overruled and the "company" excepted, and the trial of the case on its merits was begun, and the trial, not being completed, it was continued to the 28th of July, 1925, on which date it was concluded, and the case taken under advisement.

On December 23, 1925, the District Court rendered judgment in favor of the plaintiff and against the International Creosoting & Construction Company for $8.77 per week for forty-three weeks, beginning December 31, 1924, and for $2.03 per week for not more than two hundred and fifty-seven weeks, beginning October 31, 1925, with legal interest on each installment from its maturity. Plaintiff's demands as against Dobson Brothers were rejected and his motion for judgment on the face of the petition was overruled.

The "company" applied for and was denied a new trial, and it appealed. The plaintiff also appealed. Dobson Brothers did not appeal.

Plaintiff has answered the "company's" appeal and asked that the judgment be amended so as to give him judgment against both the "company" and Dobson Brothers in solido for $23.40 per week for 52 weeks, beginning December 31, 1924, and for $17.55 per week for 248 weeks, beginning December 31, 1925, and for $150.00 medical expenses.

## OPINION

### ON MOTION FOR JUDGMENT

The motion was filed on July 20, 1925. Its basis is:

"That neither Ross R. Dobson individually, Eugene P. Dobson individually, nor the International Creosoting & Construction Co. has made any appearance nor filed an answer on this date, July 20th, 1925; that more than seven days have elapsed since the service on either of the defendants. * * *"

The record shows that on July 11, 1925, nine days before plaintiff filed his motion, Dobson Brothers filed an answer fully putting at issue the allegations of his petition.

The record also shows that on the very day plaintiff filed his motion, July 20, 1925, the International Creosoting & Construction Company filed four separate pleas, namely: an exception to the jurisdiction of the court ratione personae, an exception to the citation, a plea of prescription, and an answer fully denying the allegations of plaintiff's petition.

With these pleadings in the record undisposed of the District Court would have erred had it not overruled the motion.

The Code of Practice, Article 180, and the terms of the citation served on the secretary of state allowed the "company" ten days, exclusive of the day of service and of that on which the delay expired, in which to answer. As service on the secretary of state was made on July 9, 1925, the "company's" time to answer did not expire until July 20, 1925, and as its pleas were filed on July 20, 1925, they were filed in ample time.

Passing over the other defenses interposed by defendants, we come at once to the question of whether or not the relation of employer and employee existed between plaintiff and defendants or either of them.

As to this he himself testified:

Testimony, page 67:
"Q. Where did the I. C. Company get the ties that you loaded?
"A. I do not know; I never seek to find that out.
"Q. You never heard anybody say?
"A. No, sir; I do not know anything about that.
"Q. You did not know about that?
"A. Not about that.
"Q. Did they have them made in the woods?
"A. I do not know; they were on the track when I saw them.
"Q. You do not know how they got on the track?
"A. No, sir; I do not know.
"Q. You never did see anybody haul them and put them on the track?
"A. I was not keeping up with that.
Testimony, page 68:
"Q. Why do you say you were loading I. C. ties?
"A. Because their brand was on them. We did not load a tie except that has their brand.
                    *   *   *   *
"Q. Did you load any other ties that were shipped to some other company besides the I. C.?
"A. I did.
"Q. Did you load any ties belonging to any other company besides the International Creosoting & Construction Company?
"A. Yes, sir; I loaded for other people.
"Q. Who did pay you for loading for other companies?
"A. R. S. Brown; Rube Brown.
                    *   *   *   *
"Q. How many cars did you load in the month of December, 1924?

"A. I do not know for sure; I could not tell exactly how many.

* * * *

"Q. How many in November, 1924?

"A. I do not know.

"Q. Do you know how many you loaded any month during 1924?

"A. I have never kept up with it.

"Q. Do you know how many you loaded in 1924?

"A. No, sir.

"Q. Was it one?

"A. It was more than one.

* * * *

"Q. Was it fifteen?

"A. Well, I will say it was something like twenty-five cars.

* * * *

"Q. How many days did it take you to load any one car?

"A. It took me and my partner to load a car one day.

"Q. How much money did you get in cash for loading any one car of ties—not how much per tie?

"A. Average six dollars per day.

"Q. How much did you get for loading a car?

"A. Six dollars.

"Q. You worked not exceeding twenty-five days during the year 1924, according to this, loading ties for the International Creosoting & Construction Company at Chestnut?

"A. Yes, sir; that is right.

"Q. How many days did you load ties for other parties during 1924?

"A. I loaded at Saline for Mr. Cooper; I do not know where his firm is; I loaded something like twenty-five or thirty for that company at Saline.

"Q. Did you load anywhere else during 1924?

"A. Yes, sir; I loaded at Lucky.

"Q. How many did you load there?

"A. I loaded fifteen cars there.

"Q. About sixty-five cars that you loaded during the year 1924 at the best?

"A. Yes, sir.

"Q. Taking you one day to the car?

"A. Yes, sir.

"Q. And making an average of $6.00 per car?

"A. Yes, sir.

"Q. What was your agreement with Dobson Brothers at Chestnut when there was a car to be loaded?

"A. Whenever I was down there, if there was a car to be loaded, he would tell me and I agreed to load for so much per stick.

"Q. You agreed to load a car for so much a stick?

"A. Yes, sir.

Testimony, page 72:

"Q. That was your contract with them, to load that car, whether it took you one hour or one day or one week or month, you were to load that car at so much a stick?

"A. Yes, sir.

"Q. That was your contract or agreement with Dobson Brothers?

"A. Yes, sir.

"Q. Who paid you for loading the ties?

"A. My understanding was ——

"Q. Answer the question; never mind your understanding; who paid you the actual money for loading the cars at Chestnut?

"A. He handed me the money, and where it came from I do not know.

* * * *

"Q. And that was your agreement, to load the car. It was not by the week or day or one day or two days; it was to load the car, was it not?

"A. Yes, sir.

"Q. And when the car was loaded he paid you the amount per stick for the number of sticks you put in the car?

"A. Yes, sir.

"Q. Did it take you more than one day to load a car sometimes?

"A. No, sir, unless it rained.

"Q. Then it did take you more than one day?

"A. Sometimes.

"Q. Did you ever start a car in the morning and the rain stop you, and you start the next morning and finish?

"A. Yes, sir.

* * * *

"Q. Did you ever start a car and not finish it until the next day?

"A. I have started it and finished it the next day about an hour.

"Q. Had you been working by the day you would have been paid by the day?

"A. I suppose if I had been working all the time I would have been docked for that time.

* * * *

Testimony, page 74:

"Q.  What did you understand when you took a contract?

"A.  I understood he was to pay me so much a stick.

"Q.  Whether you finished the car or not?

"A.  Yes, sir; that was my understanding.

Testimony, page 53:

"Q.  Did you ever load any ties at Skidder?

"A.  Yes, sir; I loaded some.

"Q.  Who did you load for; whose ties were they?|

"A.  They were branded in the I C brand.

"Q.  Did you load any at Strange

"A.  Yes, sir; I loaded some up there.

"Q.  You were the loading contractor for those stations, were you not?

"A.  Not altogether.

"Q.  Who else had contracts besides yourself?

"A.  I didn't consider it was any contract. They knew I could load ties and had been following it for some time, and they would say the ties are there and the company would pay for them.

"Q.  When you saw a load of ties to be loaded out, you would go to the depot and order out the cars?

"A.  No, sir.

"Q.  Did you go to Mr. Dobson and tell him to have the car 'spotted' for you?

"A.  After he inspected them, I would tell him to order a car, if I was at leisure."

Plaintiff alleged that he was employed by both Dobson Brothers and the "company". Both of them denied this. The burden was on him, therefore, to prove the fact. We do not think he has discharged this burden. His testimony as to the conditions under which he worked convinces us that he was not the employee of either defendant but an independent contractor. He was a professional loader of ties by occupation. He labored for others who had ties to be loaded as well as for defendants. He worked on such days and during such hours as he pleased. He was not under obligation to load any given number of ties in any fixed space of time. Neither of the defendants had any control over the manner in which or the time when he should do his work. He was not paid for his services by the hour, day or week, but so many cents for each tie he loaded; and this whether the number he loaded amounted to a carload or not; three cents each for pine and gum ties and four cents each for white oak and red oak ties. When he saw ties stacked along the railroad right-of-way ready for shipment, if he was at leisure he would request Dobson Brothers to have a car "spotted" for him to load them in. He says "they (meaning Dobson Brothers) knew 'I could load ties and had been following it for some time', and they would say, the ties are there and the company (meaning the International Creosoting & Construction Company) would pay for them"; and thereupon he proceeded to load the ties into the car in his own way and taking his own time. This does not show a relationship of employer and employee between him and the defendants or either of them. On the contrary, it shows him to have been an independent contractor; on a small scale, it is true, but nonetheless an independent contractor.

Finding that the relationship of master and servant did not exist between plaintiff and defendants, or neither of them, it becomes unnecessary for us to consider the other defenses set up by defendants.

For the reasons assigned it is therefore ordered, adjudged and decreed that the udgment appealed from be avoided and reversed and that plaintiff's demands be rejected and his suit dismissed at his cost.