No. 797

First Circuit

COBB v. LONG BELL LUMBER CO.

(May 5, 1931. Opinion and Decree.)

MOUTON, J. Plaintiff, who was running a blacksmith shop in Deridder fully equipped to shoe horses and mules, entered into a contract with defendant company to have its mules shod. It was agreed that the shoeing of the mules would be done by plaintiff at the barn of defendant company, in consideration of the offer that plaintiff would get a regular job to shoe all of its mules. Plaintiff went in his conveyance to the barn, and carried with him the nails, shoes, hammers and aprons necessary to do the shoeing.

It is shown that he was doing the work for the same price he was charging at his shop to his customers for similar services. It was usually at the noon hour that he was engaged in shoeing at the barn. He agreed to this as a concession for the regular work he was to have from the defendant company. When not so engaged there, plaintiff ran his shop in Deridder, and shod horses and mules for his customers. His shop was open to the general public for services in his line of business. Counsel for plaintiff points to the fact that, under the agreement, plaintiff was required upon order or notice to respond, leave his work at the shop, if necessary, and go to the barn to attend to the shoeing of defendant's mules. This condition of the contract was also evidently acceded to by plaintiff in consideration of the regular work he was obtaining from defendant company and which probably was an advantage that did not accrue to him in the irregular business which came to him at his shop from the general public. His agreement to go to the barn was a mere preference which was accorded defendant over the other customers, and which did not change the nature of the contract, as plaintiff continued to operate his shop, and merely modified his relation to his other customers in so far only as he was

Hawkins & Pickrell, of Lake Charles, attorneys for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

required to give first attention to the calls by defendant company.

Counsel for plaintiff refers to the circumstance that in shoeing the mules he was required by the foreman of defendant not to put calk toes on the shoes as they would wear off on the tram where the mules were used. This requirement might have been made by any of the ordinary customers of the plaintiff, and doubtless would have been complied with. Counsel refers to another instance where plaintiff cut a corn off the foot of one of the mules in compliance with the direction of the foreman of the company. Such a demand could have equally been made by any other to whom plaintiff might have been rendering his services, and which would not have changed the contractual relations between them so as to have constituted plaintiff an employee.

The requirements in the instances above referred to, with which plaintiff complied, were merely incidental to his work, and cannot possibly be characterized as acts of supervision or control over the work or services of plaintiff under his contractual relations with defendant company.

Though plaintiff had given preference to defendant's work, as before explained, he still remained in his individual independent business of shoeing horses and mules at his blacksmith shop. It may be that the preference so granted in his contract with defendant might have caused displeasure to his other customers and a falling off in his trade; such a consequence, however, could not affect the character of his contract with defendant company.

Such a contract might be made with a tinner or plumber, with preference given by the latter to one customer over other customers on account of the quality or quantity of work proffered to be performed in their usual lines of business. These independent tradesmen could not, under such an agreement, be considered as employees within the intendment of the compensation statute.

As we read the statute, the same reasoning leads us to a similar conclusion in the case at bar.

Counsel for plaintiff refers us to section 3, par. 8, Act No. 85 of 1926, p. 113 amendment to the Employers' Liability Act, which defines an "independent contractor," as follows:

"The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

From the foregoing excerpt counsel for plaintiff reasons out that any one who performs manual labor is an employee and cannot be an "independent contractor."

Few contractors, it is safe to say, engaged in their usual trades or pursuits, do not at some time or other render some service in the way of manual labor, in carrying out their contracts. If what counsel is contending for be made an unqualified or absolute test, independent contractors would rarely if ever come up for consideration in suits of this character.

In the section of the statute, above reproduced, it will be noted that it refers to a person rendering "service * * * as a unit or a whole."

In passing on this feature of the statute, the district judge, in his written opinion,

found that the furnishing of the materials, in the instant case, should be considered services within the meaning of the statute, and should not be excluded from the definition of independent contractor.

It is shown that Mr. Anders, who was foreman of the barn and who notified plaintiff when he was needed, called him only when it was necessary to shoe the mules, and knew absolutely nothing about shoeing horses. It is therefore apparent that defendant company exercised no control whatsoever "as to the means" by which the result of plaintiff's work was accomplished which is reprobated in the section above referred to.

The fact is that defendant company exercised no supervision or control over the work of the plaintiff, except in so far as to "result only," which was not in the least inimical or incompatible with the definition of an independent contractor, as defined in the statute.

It also appears that plaintiff was paid on monthly invoices sent defendant company, and was not carried on the pay roll, a fact to be noted in connection with an affidavit made by Smith, superintendent of defendant company, in reference to an accident insurance policy.

In the affidavit, Smith made the statement that plaintiff was in the employ of defendant company. Counsel for plaintiff concludes from this statement of the superintendent in the affidavit that defendant company considered plaintiff an "employee."

The fact that the company never carried plaintiff's name on the pay roll is significant in reference to the light in which the company regarded the nature of his contract under which he was paid on his monthly invoices. The fact that the superintendent of the company took upon himself to refer to plaintiff as being in its employ for the purpose of assisting him in making a collection on an insurance policy, cannot be accepted as a construction of the contract as contended for by plaintiff, and which at no time has been so interpreted by defendant as far as the record discloses.

It is appropriate in connection with the foregoing contention to refer to what we said in the case of Johnson v. Vincennes Bridge Co., 9 La. App. 173, 119 So. 539, and which was subsequently approved in Id., Johnson v. Vincennes Bridge Co., 167 La. 107, 118 So. 820.

In that case we held that plaintiff was an independent contractor; that the nature of his contract had fixed legal essentials, and neither of the parties could control its legal effects. Being made, the law alone could control its results, in which decision we referred to several authorities on that question.

Here, likewise, plaintiff is an independent contractor, his contract had fixed legal essentials, and neither party could control its legal effects. As such was the situation herein, after the contract had been entered into and existed when the superintendent undertook to denominate plaintiff an employee of the company, even if he intended to so recognize him, his purpose would have been futile, as he could not possibly change the fixed legal characteristics of the agreement by which plaintiff was constituted an independent contractor.

Counsel for plaintiff refers to a number of decisions of the Courts of Appeal and of the Supreme Court. Some of these cases we had occasion to struggle with at various times in applying the compensation statute. These various cases present

a state of facts different in many essential respects from those which appear in this record. None of the decisions referred to are determinative of the contentions here, and we have therefore found it unnecessary to refer to them in the conclusions we have reached herein.

We find, for the reasons stated, that plaintiff was not an employee of defendant company within the terms of the statute, but was an independent contractor; that he cannot therefore recover compensation for the loss of an eye which resulted from the clipping of a nail while shoeing a mule for defendant company.

The demand was properly rejected.