### RODGERS v. CITY OF HAMMOND.

No. 1814.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1938.

Rownd & Tycer, of Hammond, for appellant.

Leon Ford, Jr., of Hammond, for appellee.

OTT, Judge.

■ Plaintiff sues the city of Hammond for compensation for a period of 400 weeks, based on 65 per cent. of his weekly wage of $35.70, plus $250 for medical expenses. His claim is for total permanent disability resulting from the loss of his arm from an accident while repairing and overhauling the electric motors and pumps of the sewage disposal plant of said city on May 13, 1937. While plaintiff claims the full amount of 65 per cent. of his said weekly wage, or $23.21, for the full 400 weeks, yet he has evidently overlooked the fact ·that in no event could he recover more than the maximum of $20 per week for said period, as fixed by law. Act No. 242, p. 357, § 8, subd. 3.

The only issue raised in the case is whether or not plaintiff, at the time of the injury, was an employee of the city of Hammond, or was an independent contractor within the meaning of the law that excludes such an independent contractor from the provisions of the compensation law. Judgment went below in favor of the city, rejecting plaintiff's demands, and it is from this judgment that plaintiff has taken this appeal.

By trade and occupation, plaintiff is an electrician, and had been formerly local manager of the light plant at Kentwood. The city of Hammond had been in communication with Fairbanks, Morse Company with a view of having that company do the repair work on the motors and pumps of the city's disposal plant, but for some reason this company did not do the work. Plaintiff was recommended to the mayor as a competent man to do the work by one of the city's assistant engineers.

An agreement was entered into with plaintiff by the mayor of the city by which plaintiff was to do this repair work and was to be paid on the basis of 70 cents per hour. The plaintiff kept his own time and worked the number of hours per day that he chose, with the understanding, however, that his time was to be approved by the assistant city engineer, and, also, by an agreement with

the assistant engineer, it was understood that ordinarily the hours of work were fixed at 8 hours per day. But we understand that this latter arrangement between plaintiff and the assistant city engineer was made merely as a matter of convenience to the city, as the city employed several laborers to assist plaintiff in the repair work, but these men were under the control and direction of plaintiff, and plaintiff himself could work just as many hours as he saw fit.

█ We do not think it was the understanding of any of the city officials, nor of the plaintiff himself for that matter, that he was a regular employee of the city, to be shifted from one job to another, as would ordinarily be the case of an electrician working for the city as a regular employee. On the contrary, we think the evidence shows clearly that plaintiff was employed to render service for the city on this one particular job, that of repairing and overhauling the equipment composing the sewage disposal plant. It is true that he had no written contract with the city, nor was there any time fixed in which he was to complete the job, nor was he to furnish any material, but these facts, while of some value in determining the nature of the employment, are not controlling, but are to be considered in connection with the more vital and determining factor, namely, that of the degree of control exercised by plaintiff over the method and manner in which the work was to be executed.

The evidence shows that, while the city officials could have discharged plaintiff and terminated his employment, yet the evidence also shows that this could not have been done without assigning a cause therefor, that is the unsatisfactory nature of plaintiff's work.

The foregoing circumstances are given to show the background and conditions existing when the relationship between the plaintiff and the city came into existence. After all, the principal and controlling factor, as already stated, is the degree of control exercised by plaintiff in the methods used to do the work. In our opinion, the preponderance of the evidence, if not that of the plaintiff himself, shows clearly that the means and methods of performing the particular work were left entirely to the judgment and discretion of the plaintiff. In fact, the reason that he was given the job was the fact that he possessed the necessary skill and knowledge to do this kind of work, which was a part of his occupation and business. The supervision that the assistant city engineer had over the work was restricted to the final results only. This is such a vital and important feature of the case that we feel justified in giving a few brief extracts from the testimony on this point.

Plaintiff testified:

"Q. Did you have control over these men that were working there? A. Yes, sir, over the work.

"Q. You were your own boss in how you did this work, were you not, as long as you turned out a satisfactory job? A. Whenever it was satisfactory to Mr. Randolph.

"Q. He was acting for the City of Hammond? or City Engineer? A. Yes, sir."

Mr. J. M. Fourmy, the city engineer, testified:

"Q. Mr. Fourmy, you stated you were (in) the City Engineer's office, did they supervise all these jobs, particularly this one, did you have any control or (over) method by which he did the work or whether the results were satisfactory? A. Only as to the satisfactory work, as to the method of doing the work proper that kind of work, we didn't attempt to dictate as to how it was to be done."

Mr. Randolph, the assistant city engineer, called by the plaintiff, testified on this point:

"Q. Mr. Rodgers did the work in accordance with his own idea as to how to do it? You satisfied yourself whether it was satisfactory only in the result? A. That is correct."

Section 3, subsec. 8, of Act No. 20 of 1914, as amended by Act No. 85 of 1926, p. 111, in excluding an independent contractor from the compensation law, defines such a contractor as follows:

"The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

█ In arriving at the status of a person performing services for another with the view of determining whether or not such person is an independent contractor and without the protection of the compensation law, three primary factors must be taken

into consideration: First, whether the service is rendered for a specified recompense; second, for a specified work either as a unit or a whole; and, third, whether the person rendering the service retains control and direction over the means and methods employed by him in accomplishing the work.

■■ Applying this rule to the present case, we find no difficulty in reaching the conclusion that plaintiff was to receive a specified recompense for his services, viz., the sum of 70 cents per hour while he was doing the work. This compensation is definite and easily ascertainable, and, in the second place, as will appear from what has already been said, plaintiff was to render his services for one particular piece of work, viz., in the repair and overhauling of the motors and pumps, and other equipment, connected with the disposal plant. This piece of work, considered as a unit or as a whole, can be easily and clearly distinguished from work of a general nature. And, finally, unquestionably the plaintiff retained full and complete control over the means and methods of doing this specified work and was himself responsible for its proper execution. The work was of the kind that he was specially qualified to perform, and he was therefore left with the discretion of doing it in his own way.

It is manifest that the principal reason for relieving an employer from responsibility for an injury to an independent contractor is the fact that the employer surrenders to the contractor the means and methods of doing the work, thereby taking it out of the power of the employer to take precautions against injury to the person while performing the work in his own way. The independent contractor does not have to take directions from the employer as to how he is to do a piece of work, whether by exposing himself to unusual and unnecessary dangers, or by taking extraordinary precautions for his safety.

The fact that plaintiff might have done at times a class of work that might be termed "manual labor" would not take him out of the category of an independent contractor, if all of the other conditions were present to make him an independent contractor. Hatten v. Haynes et al., 175 La. 743, 144 So. 483; Myers v. Newport Company, 17 La.App. 227, 135 So. 767.

We think this case is very similar to the case of Hebert v. Blair et al., La.App., 142 So. 849, where the court said:

"Plaintiff undertook to render a service for a specific recompense to be based on the amount of time required to do the work, at the regular rate per hour for his services as a mechanic. This service was to accomplish a specified result; namely, the putting of a gasoline engine in good running order so that it would do the work it was supposed to do. The means by which this result was to be accomplished were not under the control of the defendant, but entirely of the plaintiff himself."

There are many cases in our reports on the question of when a person is or is not to be deemed an independent contractor. It will be found by an examination of these cases that many different factors were considered in giving effect to an interpretation of the law on this point as it applied to the facts in each case. We feel safe in saying, however, that the factor given the most weight was that of the degree of control retained and exercised by the person doing the work, and the methods employed in its execution. We are content in citing only a few cases that we deem most appropriate to our conclusions in the matter: Helton v. Tall Timber Lumber Company of Louisiana, Inc., 148 La. 180, 86 So. 729; Cobb v. Long Bell Lumber Co., 16 La.App. 297, 134 So. 310; Clements et al. v. Luby Oil Co., Inc., 170 La. 910, 129 So. 526.

■ We are not unmindful of the fact that, where an employer sets up as a defense that the person injured was an independent contractor, the employer then assumes the burden of proving this special defense. But in this case, we think that burden is fully met, not only by the witnesses of the defendant, but, to a large extent by the witnesses for the plaintiff and the testimony of the plaintiff himself.

We are unable to find any error in the judgment of the trial court.

For these reasons, it is ordered that the judgment appealed from be and the same is hereby affirmed, at the cost of appellant.