On January 19, 1944, plaintiff, Herman Allgood, was working upon a scaffold applying asbestos siding to the premises #5430 Hawthorne Place in the City of New Orleans in compliance with a contract of employment previously entered into between plaintiff and his brother, Myron Allgood, and Julian J. Loeb. While thus employed, he sustained serious personal injuries when a motor truck owned by Loeb and operated by his superintendent, James J. Livingston, backed into the driveway of the premises and struck the ladder supporting the scaffold upon which plaintiff was working, causing him to be thrown to the ground.
Plaintiff thereafter instituted suit in the Civil District Court against Livingston and Loeb for $36,700 damages for his personal injuries, which he alleges are attributable solely to the negligence of Livingston, who was acting in the course and scope of his duties as Loeb's employee at the time of the accident. In his petition, plaintiff disavows that he was an employee of Loeb and specifically charges that he and his brother were independent contractors under a verbal contract which they made with Loeb during the month of December 1943 whereby they agreed to apply asbestos siding to the premises #5430 Hawthorne Place for a stipulated price of $4.50 per square.
Defendants, Livingston and Loeb, while admitting the happening of the accident and that Livingston was operating Loeb's truck in the course and scope of his employment, denied negligence on the part of Livingston. Loeb also denied plaintiff's allegation that he and his brother were independent contractors and, specifically setting forth that they were his employees, pleaded that plaintiff's exclusive remedy was for workmen's compensation under the Employers' Liability Act, Act No. 20 of 1914, as amended, as he had been hired to manually cut, fit, apply and fasten sheets of asbestos siding to the premises #5430 Hawthorne Place at a wage of $4.50 per square.
After a trial in the District Court on the foregoing issues, there was judgment in favor of plaintiff as against the defendant, Livingston, for damages in the sum of $7,500 but the court rejected plaintiff's demand against Loeb on the ground that plaintiff was Loeb's employee and not an *Page 570 
independent contractor. Plaintiff has appealed from the decision insofar as it dismisses his suit against Loeb. Inasmuch as the defendant, Livingston, has failed to appeal from the judgment below, the sole question presented to us for decision is whether plaintiff was an independent contractor or Loeb's employee.
Although opposing counsel for the litigants are in absolute disagreement as to the legal conclusion to be drawn from the evidence in the case, it appears from a careful examination of the record that there can be but little, if any, dispute as to the facts concerning the employment of plaintiff and his brother by the defendant, Loeb, or the nature of that employment. Indeed, we find that all of the witnesses testifying in the court below were most frank and sincere respecting the facts which were within their knowledge. The only conflict or variance in any of the testimony results from the conclusions drawn by some of the witnesses and their opinions as to what they conceived to be the nature of plaintiff's employment. We find the facts of the case to be as follows.
The defendant, Loeb, is engaged in the business of roofing and siding buildings and conducts his operations under the trade name of National Roofing and Siding Company. In pursuance of this enterprise, he makes contracts to do roofing and siding at a fixed price and employs many persons to assist him in carrying out his undertakings. Plaintiff and his brother are journeyman carpenters and are skilled in fabricating and installing asbestos siding on buildings. During the year 1943 and, thereafter, they were regularly employed by Higgins Industries as carpenters for five days a week from 4:25 p.m. until 1:25 a.m. They were paid by the week on an hourly basis and their individual earnings averaged $75 per week. Sometime during the latter part of 1943 (the exact month is not disclosed by the evidence), Loeb advertised in the "Help Wanted" columns of the New Orleans newspapers for carpenters with experience as "siding applicators". In response to this advertisement, plaintiff and his brother went to Loeb's office and applied for work as siders. They were there interviewed by Livingston (who is Loeb's superintendent and foreman) and, after a recitation of their qualifications and experience, were employed to do siding work on the basis of $4.50 for each square of siding applied by them on the job. At the time plaintiff and his brother were engaged, they informed Livingston that they were regularly employed at Higgins Industries and that, therefore, they could work for Loeb only during such hours which would not interfere with their hours of work at Higgins. Plaintiff testified that he told Loeb that "we would have to accept employment to do the work when we could and could not have any steady hours to do the work in." They were accordingly hired by Loeb with the understanding that they would perform their work expeditiously by working reasonable hours which would not conflict with their regular working days at Higgins Industries. Plaintiff, his brother and Loeb assert that this was the agreement. In addition to this, Loeb was required to furnish all materials, equipment and instruments used in the siding work, excepting hand tools such as a hammer, saw, etc. which are usually provided by a carpenter in all contracts of employment. Plaintiff, his brother and other carpenters, who testified in the case, stated that, whether they worked on an hourly basis or otherwise, they invariably supplied the tools of their trade.
The evidence further shows that plaintiff and his brother had worked on and completed seven siding jobs for Loeb prior to the accident and that they had practically completed the job at Hawthorne Place at the time plaintiff was injured; that they were covered as employees under Loeb's compensation insurance policy; that plaintiff was treated for his injuries by the physician of Loeb's compensation insurance carrier; that plaintiff and all other siders employed by Loeb were carried on his payroll; that social security and withholding taxes were deducted from each pay check they received and that they voluntarily submitted withholding exemption certificate forms for income tax purposes so that Loeb could make the correct income tax deductions from the amounts due them. It was also brought out in the evidence that Loeb did not usually pay plaintiff and his brother at the end of each working day or week but, after their work on a particular building had been completed and approved by Loeb, they received their pay, which was based upon the number of squares of siding applied by them. Individual checks were then issued to plaintiff and his brother in such proportions of the total sum due as they directed. There was one instance, however, where Loeb made an advance payment to plaintiff and his brother before the job on the particular *Page 571 
building was complete. It is also undisputed that plaintiff's contract of employment with Loeb was such that it could be terminated at any time at the will or caprice of either party and, while there is some evidence to the effect that Loeb would not pay for siding applied until the entire job was completed, the vast preponderance of evidence (as shown by the testimony of Harry Morvant and other carpenters, who occupied the same status as plaintiff and his brother) reveals that Loeb would pay the agreed price per square to each and every sider for all squares of siding properly applied in the event they failed or refused to complete the entire job.
Plaintiff and his brother, in an attempt to establish the relationship of hirer and independent contractor, testified that, before they would accept any particular siding job from Loeb, they would visit the site in order to determine whether the nature of the work was such that they could earn a sufficient amount therefrom to make it worth their labor; that they refused to accept several jobs because there were too many openings in the buildings which made their work more difficult; that they had the right to employ such helpers and other assistants as they might deem necessary in the performance of the work and that they, at all times, considered that they were sub-contractors of Loeb because (1) they had no regular hours of work (2) were not supervised or controlled by Loeb or Livingston in the performance of their duties and (3) were paid for their labor only after the entire job was completed.
It is the contention of plaintiff's counsel that the Judge of the District Court was in error in determining, under the foregoing circumstances, that plaintiff was an employee and not an independent contractor for the reason that he was rendering service for a specific recompense and for a specific result, either as a unit or as a whole; that he had full control over the manner and means by which his work was accomplished; that Loeb did not supervise the work and that his control was limited to the final results thereof.
[1-3] Considering all of the foregoing facts as a whole, we experience little difficulty in concluding that plaintiff was not an independent contractor within the contemplation of law. There is a multitude of cases in the jurisprudence of this State involving the question of whether one employed to perform services for another occupies the status of independent contractor or employee. And the appellate courts, in searching for the correct solution, have applied certain tests or formulae by which they have been guided in reaching a conclusion on the particular state of facts involved in each case. The tests used by the courts have not been entirely uniform and it is safe to say that no exact formula or guide can be adopted which will govern the result to be reached but that each and every decision must stand upon the facts and circumstances presented. This court has many times had occasion to consider the question here involved, in tort actions as well as in suits for workmen's compensation. In tort cases, we have said that the prime factor to be considered, in determining the relationship between the parties, is whether the employer, under the facts presented, has retained the right of supervision and control over the employee. See Taylor v. Victoria Nav. Co., La. App., 176 So. 519.
In Gallaher v. Ricketts, La. App., 187 So. 351, 355, we remarked:
"As we have above stated, the true test of the relation between the parties is founded upon the right of the employer to supervise and control the movements of the employee. Whether the employer actually exercises control or supervision is of no moment. The important question is whether, from the nature of the relationship, he had the right to do so. On the other hand, the term 'independent contractor' connotes a freedom of action and choice in respect of the undertaking and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants."
Of course, it is sometimes difficult to determine, in cases where it appears that the employer has not actually exercised supervision and control over the employee, whether the contract of hiring was such that the parties contemplated that the employer had the right to supervise the employee in the performance of the work if he had so desired. And, when such a case appears, the courts are compelled to use other criteria in order to discern whether the nature of the contract was such that the employer possessed the right of control. In these cases, the courts have given consideration to the nature of the services rendered; the right of a person performing the service to employ helpers and assistants; whether the party employed *Page 572 
is to furnish the material and equipment for doing the work; the independent nature of the business and occupation of the person performing the service; whether or not the person is employed for the performance of a specified piece of work as a whole or a unit thereof for a fixed price; whether or not the employee could quit or be discharged at any time and other cogent factors.
In the recent case of Durant v. Industrial Lbr. Co.,6 So.2d 164, the First Circuit Court of Appeal, in considering whether a person under a particular contract of hiring was an independent contractor or an employee, observed that, while the definition of an independent contractor in the compensation law sets forth two principal elements or criteria which ordinarily govern the situation, there are at least six other tests which are frequently used by the courts in determining the status or relation between the parties. The elements referred to by the court there include all of the factors which we have hereinabove set forth. It was further stated in the Durant case that it was not necessary for the facts to show a concurrence of all of the elements or criteria outlined by it but that consideration would be given to each of these elements for the purpose of assisting it in determining the ultimate question.
In other words, it is the view of the court in that opinion that each case must be resolved upon its own particular facts after considering the employment as a whole in the light of the tests generally used by the courts. We fully concur in that view.
We do not think that the facts of this case present any serious problem with regard to the relation of plaintiff and Loeb. Plaintiff and his brother are journeyman carpenters and were employed regularly at Higgins Industries. Their employment by Loeb as siders was on a piece-work basis. Neither plaintiff nor his brother held themselves out as contractors (they had no regular place of business; did not bid on contracting work and furnished nothing but manual labor) nor was it ever contemplated by the parties that, in case they quit the job before completion, they would be responsible to Loeb for breach of contract. While Loeb admitted that some of the other siders working for him employed helpers, this fact could not alter the relationship between the parties nor does the fact that plaintiff's working hours were irregular or that little or no supervision or control was exercised by Loeb over plaintiff and his brother in the performance of their duties change the nature of their relationship as employees to that of independent contractors. Conversely, when we consider that Loeb could dispense with their services at any time; that plaintiff and his brother were carried on Loeb's payroll as employees and that social security and withholding taxes were deducted from their pay, these facts tend to show that plaintiff did not believe that he was an independent contractor until after the accident and we have no doubt that the relationship between the parties was such that Loeb, had he seen fit to do so, had the right to direct and control plaintiff in the execution of his work and that he would have done so had he not been thoroughly satisfied that plaintiff was a skilled and competent sider who needed little or no supervision and control in the performance of his job.
Insofar as the irregularity of plaintiff's working hours is concerned, the evidence shows that Loeb expected him to do the work assigned to him as expeditiously as possible provided, of course, that it did not interfere with his regular employment as a carpenter for Higgins Industries. Indeed, by applying the numerous tests above outlined to the facts of the case, it seems most clear to us that not only did the parties themselves contemplate and believe that plaintiff was an employee and entitled as such to the remedies provided by the Employers' Liability Act but that, were it not for the fact that the accident befalling plaintiff was occasioned by the negligence of another employee, plaintiff would have unquestionably asserted a claim for workman's compensation which would have received favorable judicial recognition.
Paragraph 8 of Section 3 of the Employers' Liability Act, as amended by Act No. 85 of 1926, p. 113, provides as follows:
"A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as an independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this Act. The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and *Page 573 
not as to the means by which such result is accomplished."
Plaintiff contends that the foregoing definition of an independent contractor is inapplicable to him for the reason that he is not suing for workmen's compensation but is proceeding in tort under Article 2315 of the Civil Code. This proposition is based on the theory that, whereas the courts have adopted a liberal interpretation of the compensation act so as to include within its provisions many claimants who would not ordinarily be considered as employees, such an interpretation is inapplicable here as he is not seeking the benefits of that law. In support of this theory, plaintiff's counsel rely upon our decision in Marquez v. LeBlanc, La. App., 143 So. 108, where Justice Higgins of the Supreme Court (then a member of this court) observed that there was a lack of consistency in the jurisprudence concerning employees and independent contractors and that, whereas the courts had adopted a liberal construction in favor of claimants in compensation cases, a strict interpretation and construction of the rules respondeat superior had been applied in tort cases. And it was there concluded that, since the claim was for damages, the jurisprudence in tort cases would be applied rather than the liberal pronouncements in compensation matters.
[4] The rule announced in the Marquez case is clearly inapplicable here for the reason that that case involved plaintiff's right to recover damages from the defendant on the ground that she had been injured by the negligence of defendant's employee, who, defendant maintained, was an independent contractor. Application of the Employers' Liability Act was not in anywise invoked. It was not a case like this where plaintiff, who would normally be entitled to workmen's compensation, seeks to avoid the exclusive remedy provided by that statute and sue in tort on the theory that he is an independent contractor. Obviously, in these circumstances, it would be highly unsound to adopt the so-called strict rule of interpretation of the relationship of the parties and thus adjudge that all of the persons similarly situated as plaintiff in their employment with Loeb shall be governed by a different standard than that usually applied in compensation cases.
[5] However, counsel for plaintiff proclaim that, even if the definition contained in the Employers' Liability Act is applied to him, he still must be regarded as an independent contractor. This point is purely academic for the reason that, as hereinabove shown, we cannot consider plaintiff's status to be other than that of an employee when the nature of his employment is viewed in the light of the tests and criteria usually applied in tort cases. And, surely, by no stretch of the circumstances here involved, can plaintiff's employment be regarded to fall within the restricted definition of an independent contractor contained in the Employers' Liability Act. The facts of the case make it manifest to us that the contract of hiring contemplated not only that plaintiff was to perform manual labor, for which he was to be recompensed on a basis of each piece of siding applied, not as a unit or as a whole but that Loeb had the right to control him in the performance of his duties.
We say that the contract contemplated the performance of manual labor by plaintiff because the definition of an independent contractor contained in the compensation law specifically excludes those who are employed as manual laborers. While the Court of Appeal for the First Circuit has entertained the belief that the Legislature did not intend to exclude persons employed to do manual labor from the statutory definition of an independent contractor (see Cobb v. Long Bell Lumber Co., 16 La. App. 297, 134 So. 310; Myers v. Newport Co., 17 La. App. 227, 135 So. 767 and Rodgers v. City of Hammond, La. App., 178 So. 732), on the theory that there are few, if any, contractors who do not perform manual labor, we cannot see that the reason given by that court offers a valid ground for altering or destroying the clear and unmistakable language used in the Act. In fact, the decisions by the Supreme Court on this subject plainly evidence that that court does not subscribe to the view of our brethren of the First Circuit.
[6] In Hatten v. Haynes, 175 La. 743, 144 So. 483, 485, the Supreme Court, in considering whether a claimant for compensation, who was, in all other respects, an independent contractor, should be regarded as covered by the provisions of the Act for the reason that he actually performed manual labor, said:
"The fact that plaintiff personally undertook to do the manual labor is not sufficient to exclude him from the statutory definition of an independent contractor. *Page 574 
There was nothing in the contract that required plaintiff to do, or which prohibited him from doing, the laboring work himself. Plaintiff was not employed to do the manual labor, and whether he should or should not do such work was left solely to his own decision."
It is obvious, from the foregoing quotation, that the converse of the situation there presented is equally true — that is, that, if a man is employed to do manual labor in a hazardous business, he is covered by the workman's compensation law as he is specifically excluded from the definition of an independent contractor contained in the statute.
In the recent case of Nesmith v. Reich Bros., 203 La. 928,14 So.2d 767, 769, the Supreme Court had before it for consideration the question of whether a man employed to haul limestone in his trucks for the defendant, for which he was paid 70¢ per cubic yard, where he furnished his own truck and bought his own gas and oil, was an independent contractor or an employee. After quoting the definition of an independent contractor, contained in the Employers' Liability Act, the Court observed:
"The plaintiff in this case rendered service other than manual labor, by furnishing his truck and the cost of operating it. If he had rendered no other service than the furnishing of his truck and the expense of operating it, he would have been classed as an independent contractor, but in addition to thatservice he furnished his manual labor, and to that extent wasan employee, and not an independent contractor. The definition in the statute does not give a formula for determining whether the person who renders a service consisting partly of manual labor and partly of the furnishing of the implements or equipment for the rendering of the service is an employee or an independent contractor. Perhaps the distinction should be madeaccording to the extent of the manual labor furnished incomparison with any other service rendered, such as the furnishing of the necessary implements or equipment for the rendering of the service." (Italics ours.)
The foregoing, which is the last expression of the Supreme Court on this subject, evidences clearly that that Court is of the opinion that, where the employment contemplates that the hired individual is to personally render manual labor in the performance of the job, he is to be adjudged an employee and therefore entitled to workmen's compensation and that he cannot be regarded as an independent contractor within the meaning of the statute. In the instant case, the evidence establishes beyond any doubt that plaintiff and his brother were employed as carpenters to do manual labor despite the suggestion that they had the right to engage helpers to assist them in their work.
Industrious counsel for plaintiff have favored us with a long and comprehensive brief containing the citation of, and many quotations from, numerous cases which they maintain are authority for their contention that plaintiff is an independent contractor. These cases are Helton v. Tall Timber Lumber Co.,148 La. 180, 86 So. 729; Clements v. Luby Oil Co., 170 La. 910,129 So. 526; Merritt v. E. L. Bruce Co., La. App., 166 So. 195; Rodgers v. City of Hammond, supra; Rutland v. General Accident Fire Life Assur. Corporation, La. App., 200 So. 486; Migues v. Rapides Parish School Board, La. App., 158 So. 269; Miller v. Wyatt Lumber Co., La. App., 3 So.2d 565; Harris v. Dobson Bros. 6 La. App. 223 and Durant v. Industrial Lumber Co., supra. We have read all of these cases with care and are of the opinion that the facts appearing in each and every one of them (excepting Helton v. Tall Timber Lumber Co., which we find to be in conflict with the later decisions of the Supreme Court and, at least, impliedly overruled by the Court in Dick v. Gravel Logging Co., 152 La. 933, 95 So. 99) are clearly distinguishable from the situation presented in the instant case.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
WESTERFIELD, J., absent. *Page 589